Peter Roberts Enterprises, Inc. *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellant.

Argued April 6, 1977, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT. Judge KRAMER did not
participate in the decision.

*Martin Burman,* Special Assistant Attorney Gen-
eral, with him *Ronald M. Chesin,* Special Assistant At-
torney, *Robert W. Cunliffe,* Deputy Attorney General,
and *Robert P. Kane,* Attorney General, for appellant.

*Peter J. Nolan,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., August 22, 1977:

Presently before this Court is the appeal of the Department of Transportation (PennDOT) from an order of the court of common pleas which dismissed PennDOT's preliminary objections to a petition for appointment of viewers filed by Peter Roberts Enterprises, Inc. (Roberts). The court below had appointed a jury of view to ascertain just compensation for the taking of a tract owned by Roberts pursuant to Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-502(e). The basis of the preliminary objections was that there had, in fact, been no condemnation of Roberts' property and no compensable injury warranting the appointment of a jury of view.

Factually, this matter is uncomplicated. In 1968 Roberts purchased a 31-acre tract of unimproved land in Kulpsville, Towamencin Township, Montgomery County. Roberts is in the real estate development business, and had intended to develop the entire property by the erection of apartments or single family dwellings.

In 1967 PennDOT began preliminary design on a proposed limited access highway, four miles in length, designated Legislative Route 782, and commonly known as the North Penn Expressway. The plans indicate that from approximately 1969 to the present, there have been no changes in the location of this highway as it affects the Roberts tract. Although PennDOT claims that its plans are still not final, it does admit that by 1970, the location of the center line of the highway had been determined and fixed. This center line divided Roberts' 31-acre tract into two pieces. The 15-acre piece to the north of the expressway is the portion with which we must concern ourselves in this litigation. The expressway delineates the southern border

of this lot, and since there are no other roads that create access to the other three borders, the property is rendered completely landlocked by this project.

When Roberts first attempted to obtain building permits to develop the land in 1968, it was advised by township officials and officials of the Montgomery County Planning Commission that the entire parcel (31 acres) could not be developed because it would be divided by the expressway. It was also unable to obtain a building permit for the northern portion of the property because of its access problem. Roberts claims that the uncertainty and expense attendant to imminent taking forced it to sell the southern portion in 1971 in an effort to mitigate its damages.

Since 1971 Roberts has continually advised PennDOT of its inability to use or dispose of its property. Roberts currently receives no income from the property. A mortgage and a loan are outstanding against the land, and the mortgagee has made a demand for repayment in full.

More recently, PennDOT has recommended that the property be acquired, but to date, no offer has been made to Roberts; thus, the question of a possible taking is still before us.

The record is clear that many parcels near the Roberts property have been acquired over the last eight years, both amicably and by the filing of declarations of taking. A number of other properties have been acquired, or are in the process of being acquired, as "hardship" cases by virture of the filing of petitions such as the instant one.

Other relevant facts of record which the court below recognized in its decision in this case are that, first, although there is controverted evidence as to the center line of the highway being a fixed one at present, it would appear that the weight of the evidence

would lead us to conclude that the line is indeed now fixed. Second, Towamencin Township currently uses the center line as a dividing line between zoning classifications, and finally, due to funding problems, the Commonwealth will be unable to proceed on this project until approximately 1980.

In light of all the above factors, the court below found that a de facto taking of the Roberts tract had indeed occurred. We agree.

Of course, the critical section of the Code with which we must initially concern ourselves is Section 502(e), 26 P.S. §1-502(e), which states in relevant part:

> (e) If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers . . . .

This Court has in the past been confronted with the de facto taking allegation in the preliminary planning stages of highway development; most notably in *Department of Transportation v. Securda & Co., Inc.,* 16 Pa. Commonwealth Ct. 40, 329 A.2d 294 (1974), and *Conroy-Prugh Glass Co. v. Commonwealth,* 7 Pa. Commonwealth Ct. 66, 298 A.2d 672 (1973), *rev'd,* 456 Pa. 384, 321 A.2d 598 (1974). In *Conroy-Prugh,* the owner of two commercial buildings adjacent to the north end of the West End Bridge in Pittsburgh contended that the publicity attending the promulgation of plans for the extension of a highway interchange on both sides of his property had so dimished the rental income of the properties that they had been listed for tax sale, and that therefore a "de facto taking" had occurred. Although there was neither a history of acquisition or formal condemnation of surrounding properties, nor had a final location plan been approved or recorded, each of the seven design proposals for the interchange

included a complete taking of appellant's property. Our Supreme Court held that the pleadings were sufficient to support a finding of a compensable injury within the intendment of Section 502(e) of the Code because of (1) the inevitability of an eventual taking of appellant's property due to its proximity to the bridge; and (2) the alleged inability of appellant to utilize the properties for their highest and best commercial use because of the adverse impact of pre-condemnation publicity on their rental income.

More closely tied to the instant case factually, however, is our decision in *Securda* in which the Commonwealth filed a plan in Berks County demarcating the right-of-way lines of Legislative Route 1075, but postponed total acquisition of properties within the right-of-way pending approval of the Governor. Securda's tract was a *vacant building lot* just as in the instant case. We were not there concerned, as in *Conroy-Prugh,* with loss of rental income from buildings on the property, or the like, as indicators of the extent to which the property owner was being deprived of the beneficial use of his land. Rather, the interrelationship of Section 502(e), 26 P.S. §1-502(e), and Section 604, 26 P.S. §1-604, was in issue, for the property was unimproved and the crucial indicator of loss to the landowner from announced intentions to condemn was fair market value of the land itself as it related to the imminency of the taking.

Section 604, 26 P.S. §1-604, states:

Any change in the fair market value prior to the date of condemnation which the condemnor or condemnee establishes was substantially due to the general knowledge of the imminence of condemnation, other than that due to physical deterioration of the property within the reason-

able control of the condemnee, shall be disregarded in determining fair market value.

And, as was stated by our Supreme Court in *Conroy-Prugh* and cited by this Court in *Securda*:

> *While in ordinary circumstances, the presence of §604, which did not exist at the time of the Philadelphia Parkway case, [250 Pa. 257, 95 A.2d 429 (1915)] and the protections it affords a property owner whose property has declined in value because of the imminence of condemnation, might lead to a conclusion that a decline in value after the eventual location of a proposed condemnation has become fixed, without more, should not be enough to constitute a de facto taking,* the instant case does not involve such ordinary circumstances. Appellant is not simply a property owner whose property has declined in value due to the imminence of condemnation. Appellant is, instead, one who cannot use his property and, in fact, stands to lose his property because of the imminence of condemnation! According to appellant's averments, the Commonwealth's publicity about the imminence of condemnation has caused appellant to lose tenants at such an accelerating rate that rental income from the property is no longer sufficient to cover the taxes on the property. Thus, appellant finds itself facing a Treasurer's sale. Should we hold that no 'taking' has yet occurred until the formal condemnation, §604 of the Eminent Domain Code will be of no help to appellant because appellant will not be the owner of the property when the condemnation finally takes place. Recognizing, as we do, that the Commonwealth is required to publicize and hold hearings in advance of the initiation of formal

condemnation proceedings, we still believe that when these hearings and this publicity cause the owner of a commercial property to lose tenants to such an extent that the property no longer generates sufficient income to pay the taxes, which, in turn, leads to a threatened loss of the property, that property owner has a right to the appointment of viewers to award it compensation for its property. To hold that a property owner in such circumstances has no such remedy, would be to deprive that property owner of his property without due process of law. (Emphasis added.)

*Conroy-Prugh Glass Co. v. Commonwealth*, 456 Pa. at 393, 321 A.2d at 601-02.

We held that Securda did not face the unusual circumstances contemplated in *Conroy-Prugh* because (1) nothing pleaded of record showed that acquisitions to date had interfered with Securda's access or use of the remaining property; and (2) nothing was pleaded averring actual or threatened loss of property. There, we concluded that the freedom to develop the land, albeit at a substantial business risk, was still viable, and that the valuation *in futuro* provided by Section 604, 26 P.S. §1-604, was sufficient to avoid a denial of due process.

In the instant case, Roberts faces many of the problems of its predecessors in *Conroy-Prugh* and *Securda;* however, we find sufficient factual indicia present to warrant a finding that we have here something more than the mere imminence of condemnation contemplated by Section 604.

First, and of critical importance, it is undisputed that Roberts faces foreclosure by its morgagee directly related to the imminent condemnation. Like *Conroy-Prugh,* the existence of a Section 604 valuation *in*

*futuro* may be a meaningless procedure if Roberts is no longer owner of the property.

Second, it is arguable that the imminence of taking has substantially affected Roberts' ability to make any beneficial use of the property in that the ability to secure building permits has been impaired. PennDOT asserts that Roberts should now reapply for permits in light of the fact that the project has been delayed until at least 1980 and the fact that a formal taking may never indeed occur. Roberts argues that its earlier application for permits, refused on the basis of imminence of condemnation, shows that an application would likewise be fruitless at this date. We understand the position of PennDOT in this regard, for Roberts has not recently attempted to make application for permits and facts as of this date might well lead the Township to issue permits. This Court is in no position to guess what the actions on such an application might be, and it appears to us incumbent upon Roberts to have at least attempted to make application to test the premise that its land was deprived of any meaningful use.

Further, as to interference with access to the property by other acquisitions to date, the record is clear that not only is access not interfered with currently, but plans show that upon completion of the highway project, allowance will be made for access by Roberts. Thus, we are unable to find denial of access or substantial deprivation of use resulting from imminence of condemnation.

It is clear from this review that the sole factual averment, which we must accept as true for purposes of disposition of preliminary objections, removing this case from the general Section 604 rule enunciated in *Conroy-Prugh,* is that Roberts faces loss of the property through foreclosure, thus negating any Section

604 right which might attach upon eventual condemnation. A potential loss of property to the mortgagee is the greatest deprivation a landowner could suffer, far exceeding interference with access, loss of profits, or diminution of meaningful, beneficial use of the property.

Accordingly, we

ORDER

AND Now, this 22nd day of August, 1977, the order of the Court of Common Pleas of Montgomery County dismissing PennDOT's preliminary objections to a petition for appointment of viewers filed by Peter Roberts Enterprises, Inc., is hereby affirmed, and it is further ordered that the jury of view continue its appointed task of affixing a value to the property in question.

---

DISSENTING OPINION BY JUDGE BLATT:

I respectfully dissent.

I believe that the majority here has extended the concept of de facto taking beyond that which was intended to constitute a compensable injury when the Legislature adopted Section 502(e) of the Eminent Domain Code (Code), 26 P.S. §1-502(e). In *Conroy-Prugh Glass Co. v. Commonwealth*, 456 Pa. 384, 321 A.2d 598 (1974), our Supreme Court held that the property owner there was entitled to the appointment of a board of view because he had lost rental income as a direct result of the imminence of condemnation and that he was, therefore, substantially deprived of the use and enjoyment of his property. The factual situation in the case before us here, however, does not suggest that the landowner's present financial difficulties can be directly attributed to the plans for a limited

access highway which will, when and if the highway is built, require the condemnation of only a portion of the approximately 15-acre tract concerned. Instead, the record indicates that the landowner corporation, itself, pursued no formal application for the permit or permits necessary to develop the land,[1] and that the property in question was zoned residential at the time it was purchased, permitting the construction of apartments and single-family dwellings, and that there has been no change in the zoning classification since the purchase. Moreover, the record shows, and the majority opinion concludes, that there is currently no interference with access to the property and that there will be no such interference even after the highway is completed.

The landowner here should have filed application to obtain the building permits required, and, if the zoning and building authorities had not permitted the development of the land as requested, as may have been informally understood that they would, it was then for the landowner to appeal from this refusal. Moreover, if the value of the property here was incidentally diminished by the impending condemnation, Section 604 of the Code provides for just compensation to the landowner at the time of the condemnation. Section 502(e) of the Code was not intended, as I view it, to compensate a property owner for deprivation of the use of his land when he has not *attempted* to use it.

---

[1] The landowner submitted an application for a building permit in 1971, showing no means of ingress or egress in the event that the highway, as proposed at that time, was constructed, and no appeal was taken from the building inspector's refusal to issue the requested permit. No formal application for a permit, however, was made after the Department of Transportation issued a revised preliminary plan for the proposed highway showing an access road to the landowner's property.

As a matter of law, I do not believe that the landowner here has stated a cause of action for damages compensable under the Code, and I would, therefore, reverse the order of the lower court and sustain the objections of the Pennsylvania Department of Transportation.

President Judge BOWMAN and Judge WILKINSON, JR. join in this dissent.