John F. McCracken *v.* City of Philadelphia and The Pennsylvania Department of Transportation. City of Philadelphia, Appellant.

John F. McCracken *v.* City of Philadelphia and Pennsylvania Department of Transportation. Commonwealth of Pennsylvania, Department of Transportation, Appellant.

Argued March 2, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, MACPHAIL and DOYLE.

*Alan J. Davis*, City Solicitor, with him *Richard S. Kohn*, Assistant City Solicitor, for appellant, City of Philadelphia.

*Thomas J. Hines*, Assistant Counsel, with him *Ward T. Williams*, Chief Counsel, and *Jay C. Waldman*, General Counsel, for appellant, Department of Transportation.

*Louis J. DiGiacomo, Philips, Curtin & DiGiacomo*, for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., November 1, 1982:

The City of Philadelphia and the Commonwealth of Pennsylvania, Department of Transportation (DOT), appeal a Philadelphia County Common Pleas Court Order dismissing their preliminary objections and appointing a Board of View to assess damages in the de facto taking of property owned by John Mc-Cracken. We affirm.

In December of 1974, DOT began construction of Legislative Route 1000 (LR-1000), Section B-53,[1] also known as Interstate 95. The construction of the highway itself occurred approximately one block east and south of the McCracken property; however, construction in the immediate area of the property was necessary because of a decision to build a new Market-Frankford Elevated Train (El) structure in conjunction with the highway project. It is the construction activities connected with the El project which Mc-Cracken alleged, and the lower court found, constituted a de facto taking under Section 502(e) of the Eminent Domain Code.[2]

A de facto taking occurs when an entity clothed with the eminent domain power substantially deprives an owner of the use and enjoyment of his property. *Conroy-Prugh Glass Co. v. Commonwealth*, 456 Pa. 384, 321 A.2d 598 (1974). Where a de facto taking is alleged, the property owner bears a heavy burden of proof. *Helms v. Chester Redevelopment Authority*, 32 Pa. Commonwealth Ct. 377, 379 A.2d 660 (1977). He must show that exceptional circumstances exist which substantially deprive him of the use of his property and that the deprivation is the direct and necessary consequence of the actions of the entity having the eminent domain power. *Petition of 1301 Filbert Ltd. Partnership*, 64 Pa. Commonwealth Ct. 605, 441 A.2d 1345 (1982).

---

[1] Section B-53 of LR1000 runs from Frankford Avenue to Market Street within the City of Philadelphia.

[2] Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-502(e), provides:

If there had been a compensable injury suffered and no declaration of taking therefore has been filed, a condemnee may file a petition for the appointment of reverse substantially in the form provided for in subsection (a) of this section, setting forth such injury.

Where the lower court has dismissed preliminary objections to a petition for an appointment of viewers, our scope of review is limited to a determination of whether the court abused its discretion or committed an error of law. *Pidstawski v. South Whitehall Township*, 33 Pa. Commonwealth Ct. 162, 380 A.2d 1322 (1977). thus, we must decide whether the lower court[3] properly concluded that the construction activities incident to the El project amounted to such exceptional circumstances as to substantially deprive McCracken of the use and enjoyment of his property.

McCracken's property is located on three lots at the corner of Front and Richmond Streets in Philadelphia. A three-story building stands on the one lot with an attached one-story addition on the other lots. The entire first floor of the premises has been operated as a bar and restaurant for sixteen years. The second and third floors are McCracken's residence.

In his Petition for Appointment of Board of View, McCracken alleged that the demolition and reconstruction of the El effected a de facto taking of his property since access thereto was either restricted or denied from December 1974 to the filing of the Petition on March 2, 1977; that street lighting in the overall area

---

[3] On September 7, 1977, in consideration of the Commonwealth and City's Preliminary Objections to the Petition for the Appointment of a Board of View, the late Honorable G. FRED DiBONA entered an order granting leave to the parties to take depositions necessary for the determinations of whether a Board of View should be appointed. On March 13, 1979, Judge DiBONA, after the taking of depositions and oral argument, issued a final order dismissing the Preliminary Objections and ordering the matter to proceed to the Board of View for the assessment of damages.

Before having had an opportunity to issue an opinion in support of his final order, Judge DiBONA died; the case was assigned to the Honorable CHARLES P. MIRARCHI, JR., who, after having "carefully reviewed the depositions of all the witnesses" involved, issued an opinion in support of Judge DiBONA's final order.

was minimal with Richmond Street being totally without lights; and that loss of patronage due to condemnation and construction activity made it impossible for him to generate sufficient income to cover the costs of needed repairs and maintenance to his property and prevented him from operating his business at a profit.

The El project involved a substantial amount of construction activity. In order not to interrupt service on the system during reconstruction, a detour structure was erected approximately fifteen feet from McCracken's property. Construction on the temporary structure commenced April 10, 1975, and was completed on January 8, 1976, at which time the trains were transferred onto it. Demolition of the old structure occurred from January 23 to January 30, 1976. Thereafter, construction of the new El continued to May 16, 1977, at which time the trains were transferred from the detour structure onto the new structure. Demolition of the detour structure was completed in August 1977 and general clean-up work was expected to occur through May 1978.

The construction necessitated the closing of streets adjacent to McCracken's property, the removal of street lighting in the area, and the constant presence of heavy construction vehicles. During the demolition of the existing structure, six feet of dirt was dumped on Front Street directly in front of the property in order to cushion the blow from falling concrete and steel. Not only was vehicular access denied, but access into the bar and restaurant portion of the premise was severely curtailed since lumber, wire mesh and other building materials blocked both front doors.

The property also sustained structural damage as the result of the vibrations from the driving into the ground of steel piles used to support the new El. This driving occurred between twenty and fifty feet directly in front of the property. The transport of steel girders

and concrete cross beams weighing in excess of eight tons, together with the constant movement of heavy construction vehicles along Front Street, resulted in further damage to the property. A break in a water main, inadvertently hit during the City's excavation, resulted in muddy conditions along the front of the property and caused water seepage into the property's basement.

Throughout this period, McCracken's business suffered. He lost his regular customers, most being kept away by the construction. His transient business from local commercial establishments also plummeted due to the detour of traffic around his property and the closing of businesses following condemnation.[4] Gross receipts decreased dramatically.[5] McCracken was unable to meet the costs of needed repairs and maintenance to his property. He has also been unable to afford fire insurance, since, as a result of the condemnation in the area, the risks associated with abandoned buildings awaiting demolition has substantially increased his premiums.

The lower court held that the appointment of a Board of View to assess damages was supported by the record because McCracken had "clearly established that the actions of the defendants severely affected his business and the market value of his property." We agree, but for additional reasons.

---

[4] From 1968 to 1975, DOT and the City of Philadelphia systematically acquired properties in the right-of-way of I-95 (DOT acquisitions) and necessary for the Frankford Elevated project (city acquisitions). Many properties included area businesses with the loss of those businesses resulting in a concomitant loss of patronage to McCracken's business.

[5] Gross receipts decreased from $41,200 in 1972 to $24,900 in 1976 with a projected decrease to $22,500 in 1977. Profits dropped from $12,200 in 1972 to $5,600 in 1976 with a projected amount of $3,900 in 1977.

In *1301 Filbert*, this Court analyzed Pennsylvania law regarding a de facto taking. There, we said that

[t]he theory of de facto taking has been developed in response to the reality that activities carried on incident to massive, complex and time-consuming programs launched by government may so substantially interfere with one's use and enjoyment of his property as to inflict a compensable injury in a constitutional sense or as being within applicable statutory law, even though the power of eminent domain has not been formally exercised against the property in question and there has been no physical intrusion of it. (Citations omitted.)

*Id.* at , 441 A.2d at 1352. Our Supreme Court, in *Miller v. Beaver Falls*, 368 Pa. 189, 196, 82 A.2d 34, 37 (1951), held that an actual, physical taking is not necessary for *"any destruction, restriction or interruption of the common and necessary use of property in a lawful manner may constitute a taking* for which compensation must be made to the owner of the property." (Emphasis in original.)

As we recognized in *1301 Filbert*, "there is no litmus formula to determine when government action will be deemed to have the effect of a [de facto] taking. Thus, it has remained for the courts to provide, with case-by-case development, the needed doctrinal elaboration." *Id.* at , 441 A.2d at 1352.

Appellants argue that the temporary inconvenience to the property owner caused by the construction activity in no way constituted a de facto taking since mere interference with access and diminution of net profits are not compensable under the Eminent Domain Code. Further, they argue that, in a claim for a de facto taking, Pennsylvania case law requires that the property owner show a total loss of income resulting from the government activities, that a formal

taking of the property must be imminent, and that the government's pre-condemnation activities must deprive the owner of the use and enjoyment of property to the extent that the property cannot generate sufficient income to cover operating expenses and taxes.

While at first blush, appellants' arguments appear sound, their weakness is that they challenge *individually* the incidences of the construction activity, citing to case law which holds that each specific incident *alone* does not constitute a de facto taking, instead of acknowledging the cumulative effect the incidences *in toto* have had on the owner's use and enjoyment of his property.

It is well settled in this Commonwealth that an abutting property owner's right to access extends only to the right of reasonable connection with the public road system. *Brill v. Department of Transportation*, 22 Pa. Commonwealth Ct. 202, 348 A.2d 451 (1975). The Commonwealth is not liable when, in the reasonable exercise of its eminent domain power, access to an abutting property is changed or circuited. *See Tracy v. Department of Transportation*, 43 Pa. Commonwealth Ct. 218, 402 A.2d 286 (1979). If the issue in this case were solely the rerouting of traffic around McCracken's property due to the construction, clearly there would be no de facto taking and the Commonwealth and the City of Philadelphia would not be liable for any damages incident to the rerouting. However, here the construction activities involved much more than a simple detour and rerouting of traffic. The closing of streets, in addition to the removal of street lighting, the constant presence of heavy-duty construction vehicles and materials, the excavation, dirt, mud and noise, the structural damage as well as economic losses all amounted to *exceptional circumstances* which substantially deprived McCracken of the use and enjoyment of his property. We cannot conclude, as a

matter of law, that these circumstances amounted to a temporary inconvenience to McCracken.

Appellants contend that, since there was no formal declaration of taking and no imminence of condemnation, a de facto taking cannot occur. When precondemnation activities, pursuant to a planned prospective public improvement, result in the loss of tenants, *Conroy-Prugh*, or the inability to obtain a building permit, *Peter Roberts Enterprises, Inc. v. Department of Transportation*, 31 Pa. Commonwealth Ct. 479, 376 A.2d 1028 (1977), or any other "adverse interim consequence" which deprives an owner of the use and enjoyment of the property, such activities will constitute a de facto taking. *1301 Filbert* at , 441 A.2d at 1357. Even in the absence of the imminence of condemnation, we conclude here that these adverse interim consequences, depriving McCracken of the same use and enjoyment of his property, constituted a de facto taking.

We hold that the construction activities incident to the demolition and reconstruction of the El structure amounted to *exceptional circumstances* which substantially deprived the owner of the beneficial use and enjoyment of his property. The lower court's finding of a de facto taking and its order dismissing appellant's Preliminary Objections is hereby affirmed.

Affirmed.

## ORDER

The order of the Court of Common Pleas of Philadelphia County, No. 4064, dated March 13, 1979, dismissing the City of Philadelphia and the Commonwealth of Pennsylvania, Department of Transportation's preliminary objections to a petition for appointment of viewers filed by John F. McCracken, is hereby affirmed.

Judge MENCER did not participate in the decision in this case.