505 A.2d 373

In the Matter of: Selection and Appropriation of Manayunk Schuylkill Canal, Northwest of Parker Avenue and Umbria Street for Park Purposes. City of Philadelphia, Appellant *v.* Dominic Sorrentino and Mary Sorrentino, h/w, Appellees.

Argued December 13, 1985, before Judges CRAIG and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Mary Rose Cunningham*, with her, *Joy J. Bernstein*, Assistant City Solicitor, for appellant.

*Murray B. Dolfman*, with him, *Lester L. Dolfman*, for appellees.

OPINION BY JUDGE COLINS, February 21, 1986:

The City of Philadelphia (City) appeals an order of the Court of Common Pleas of Philadelphia County, which dismissed the preliminary objections to the Petition for Appointment of a Board of Viewers filed by Dominic and Mary Sorrentino (appellees) and held that the City's construction of a towpath along the Manayunk Schuylkill Canal (Canal) constituted a de facto taking of appellees' property. We affirm.

Appellees are owners of property adjacent to the Canal. In 1977, the City appropriated ground along the Canal, including a portion owned by appellees, for the construction of a public towpath. Appellees

filed a Petition for Appointment of a Board of Viewers, pursuant to Section 502(e) of the Eminent Domain Code,[1] alleging that the towpath was situated on ground conveyed to them by virtue of two deeds dated 1965 and 1970, respectively, and that the City had failed to file a Declaration of Taking or to compensate them for this property. The City filed preliminary objections averring that the towpath was situated on land owned solely by the City.[2] After a hearing, the trial court concluded that there had indeed been a de facto taking[3] of appellees' property, dismissed the preliminary objections and ordered a Board of Viewers to assess damages and award compensation. The City appealed this decision.

Where the trial court has dismissed preliminary objections to a petition for appointment of viewers, this Court's standard of review is limited to a determination of whether the trial court abused its discretion or committed an error of law. *McCracken v. City of Philadelphia*, 69 Pa. Commonwealth Ct. 492, 451 A.2d 1046 (1982).

Upon appeal, the City contends that the trial court abused its discretion by permitting appellees' wit-

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-502(e).

[2] The record indicates that the Commonwealth conveyed the Canal proper to the City on July 1, 1957.

[3] A de facto taking occurs when an entity clothed with the power of eminent domain substantially deprives an owner of the use and enjoyment of his property. *Conroy-Prugh Glass Company v. Commonwealth*, 456 Pa. 384, 321 A.2d 598 (1974). A property owner alleging a de facto taking bears a heavy burden of proof: "[h]e must show that exceptional circumstances exist which substantially deprive him of the use of his property and that the deprivation is a direct and necessary consequence of the actions of the entity having the eminent domain power." *Holmes Protection of Pittsburgh v. Port Authority of Allegheny County*, 90 Pa. Commonwealth Ct. 342, 346, 495 A.2d 630, 632 (1985); *McCracken v. City of Philadelphia*, 69 Pa. Commonwealth Ct. 492, 494, 451 A.2d 1046, 1048 (1982).

nesses to testify as experts on the exact location of appellees' property. Appellees offered the testimony of three witnesses, none of whom was a registered surveyor. The first witness, a land developer, testified that he had worked for six years as an assistant to a registered surveyor. Appellees' second witness, a local resident and historian, stated that he had learned surveying techniques while working for thirty-five years in the construction business. Appellees' final witness, a real estate appraiser, testified that he was familiar with surveys and could read them. Each witness had examined the deeds purporting to convey the land in question to appellees and had examined a survey of appellees' property performed by the City in 1973. Each witness expressed the opinion that the towpath encroached upon land owned by appellees. In contrast, the City's experts, who had similarly examined the deeds and attempted to stake out the property lines therein described, stated that the configuration of the shoreline had been so drastically altered by the deposit of fill material that the appellees' line was now a considerable distance from the water's edge.

While counsel for the City objected to the admission of appellees' testimony on the grounds that its witnesses were not qualified to testify as experts, the trial judge specifically concluded in his findings of fact that:

7. [a]lthough none of [appellees'] experts were registered surveyors, they were sufficiently qualified to testify in this case as experts.

We must concur with the trial judge's conclusions.

The law is clear that the qualification of an expert witness is a matter within the discretion of the trial judge. *Williams v. Department of Transporta-*

*tion,* 74 Pa. Commonwealth Ct. 318, 459 A.2d 913 (1983). ''The Pennsylvania standard of qualification for an expert witness is a liberal one. If a witness has any reasonable pretension to specialized knowledge on the subject under investigation he may testify and the weight to be given to his testimony is for the jury [factfinder].'' *Kuisis v. Baldwin-Lima-Hamilton Corporation,* 457 Pa. 321, 338, 319 A.2d 914, 924 (1974). ''Although the witness must demonstrate some specialized knowledge or skill, there is no requirement that a witness acquire expertise as a result of formal schooling; expertise acquired by experience is expertise nonetheless.'' *Gottfried v. American Can Company,* 339 Pa. Superior Ct. 403, 411, 489 A.2d 222, 226 (1985).

Our review of the record discloses no abuse of discretion on the part of the trial court which permitted these witnesses to testify on the exact location of appellees' property. While each of appellees' witnesses may indeed have lacked the formal training of a registered surveyor, each amply demonstrated that he had acquired specialized knowledge through his various work experiences to satisfy the liberal standard for qualification of an expert witness as discussed above.

The City further contends that the trial court erred in concluding that there had been no sudden accretion to appellees' property. The City argues that the evidence supports the conclusion of a sudden and unnatural accretion to the property resulting from the dumping by appellees of construction and excavation materials onto the Canal's edge. According to the City, this dumping by appellees so altered the natural configuration of the shoreline that the Canal edge actually encroached upon the Canal. In this regard, the trial court specifically found that:

4. [The City] admits, and the court finds, that during the construction of sections of the tow-

path [the City] deposited a landfill on the water edge of [appellees'] property in order to build a flatbed plateau for the towpath.

5. Over the years, [appellees] have used, and permitted to be used, portions of their premises as dumping ground for construction and excavation material, but none of the dumping occurred on the bed or bottom of the canal resulting in a sudden accretion of [appellees'] property.

6. There has been no sudden accretion to [appellees'] premises, and if accretion has taken place it could only have been gradual and a natural occurrence.

The trial court then applied the well-established law of *Black v. American International Corporation*, 264 Pa. 260, 107 A. 737 (1919), to conclude that appellees owned any accretion to their property. *Black* held that an abutting riparian owner on a navigable river becomes the owner of the natural accretions to his land resulting from the imperceptible deposits of alluvion[4] along his riparian front, but he does not become the owner of land formed by the deposits of materials on the river bottom either by him or with his knowledge or consent.

Whether or not a property in dispute results from accretion is a question of fact properly submitted to the factfinder. *Houseman v. International Navigation Company*, 214 Pa. 552, 64 A. 379 (1906). While the City presented testimony that accretion on the banks of appellees' property resulted from an un-

---

[4] Alluvion has been defined as "[t]hose accumulations of sand, earth and loose stones or gravel brought down by rivers, which when spread out to any extent, form what is called alluvial land. It is the addition made to land by the washing of the seas or rivers; and its characteristic is an imperceptible increase, so that it cannot be perceived how much is added in each moment of time." *Freeland v. Pa. Railroad Company*, 197 Pa. 529, 539-40, 47 A. 745, 747 (1901).

natural accumulation of refuse, the appellees presented conflicting testimony that the banks remained in a natural state. The City further admitted, and the court so found, that it had deposited fill along the water's edge of the property in order to construct the towpath. Most importantly, Judge ARMAND DELLA PORTA, viewed the site personally. We cannot find that Judge DELLA PORTA abused his discretion in resolving this testimonial conflict in favor of appellees.

Having determined that the trial court committed no abuse of discretion in admitting the testimony of appellees' expert witnesses and in resolving conflicting testimony regarding a question of fact, we must conclude that the evidence supports the finding that the City effected a de facto taking of appellees' property in constructing the public towpath.

Accordingly, we affirm the order of the Court of Common Pleas.

ORDER

AND Now, February 21, 1986, the order of the Court of Common Pleas of Philadelphia County, dated June 27, 1984, No. 4449 May Term, 1978, is affirmed.

President Judge CRUMLISH, JR. did not participate in the decision in this case.