587 A.2d 855

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant,**

v.

**FRANKFORD 5206 BAR, INC., Appellee.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1990.

Decided Feb. 27, 1991.

210

George J. Krueger, with him, Jerome R. Richter, Blank, Rome, Comisky & McCauley, and C. Neil Petersen, Asst. Deputy Counsel, Philadelphia, for appellant.

Lewis Kates, with him, Lori Nash, Lewis Kates Law Offices, Philadelphia, for appellee.

Before COLINS and KELLEY, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Southeastern Pennsylvania Transportation Authority (SEPTA) appeals an order of the Philadelphia County Court of Common Pleas (trial court) which overruled SEPTA's preliminary objections to the petition filed by the appellee herein, Frankford 5206 Bar, Inc. (the Bar), for appointment of a board of view to assess damages resulting from an alleged *de facto* taking and displacement pursuant to the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101 to 1–903. For the reasons which follow, we will reverse the trial court's order.

Pursuant to a lease agreement, the Bar became the lawful occupant of certain premises which were to be used as a restaurant-tavern. The initial lease term was for three years, commencing November 1, 1984 and ending October 31, 1987. By addendum to the lease, the Bar was given both (1) an option to renew the lease for a further term of five years from November 1, 1987 to October 31, 1992, which option would become null and void if the lessor was not given written notice of renewal on or before July 31, 1987, and (2) a right of first refusal in the event that the

lessor desired to sell the premises during the term of the lease agreement.

SEPTA acquired the premises from the lessor by agreement of sale dated January 15, 1985. This acquisition was subject to "existing lease(s)." *See* paragraph 10(a) of the agreement of sale dated January 15, 1985.

Following SEPTA's acquisition, the Bar apparently did not exercise its option to renew the lease for a further five-year term after expiration of the initial lease term on October 31, 1987, but continued to lawfully occupy the subject premises as a lessee on what appears to have been a year-to-year basis. *See* paragraph 24 of the lease agreement. By letter dated July 10, 1989, SEPTA notified the Bar of its intent to terminate the Bar's occupancy of the subject premises with the expiration of the Bar's then current lease term on October 31, 1989.

Thereafter, on August 22, 1989, the Bar filed the instant petition for appointment of a board of view. SEPTA responded with two preliminary objections.

SEPTA's first preliminary objection requested the trial court to quash the Bar's petition because SEPTA's termination of the Bar's lease was "neither caused by condemnation or [sic] manifested a *de facto* condemnation," thereby depriving the board of view of jurisdiction. SEPTA's second preliminary objection, in the nature of a demurrer, alleged that the Bar's petition failed to state a cause of action against SEPTA for which relief could be granted.

Without conducting an evidentiary hearing, the trial court, based solely on the pleadings and exhibits attached thereto, concluded that "there was substantial evidence to constitute a taking" [1] and overruled SEPTA's preliminary objections by order dated March 16, 1990. SEPTA now seeks our review of this order, contending that the trial court abused its discretion in overruling its preliminary objections without conducting an evidentiary hearing on

[1]. *Frankford 5206 Bar, Inc. v. Southeastern Pennsylvania Transportation Authority* (No. 3291 August Term 1989, filed June 11, 1990), slip op. at 4.

disputed issues of fact and, in the alternative, that it is entitled to a reversal of the trial court's order as a matter of law because the facts as pled in the Bar's petition do not demonstrate a *de facto* taking.

■ Where, as here, the trial court overrules preliminary objections to a petition for appointment of a board of view, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *City of Philadelphia v. Sorrentino*, 95 Pa.Commonwealth Ct. 236, 505 A.2d 373 (1986); *McCracken v. City of Philadelphia*, 69 Pa.Commonwealth Ct. 492, 451 A.2d 1046 (1982). Our review in the case *sub judice* must, of course, begin with the Bar's petition. Therein, the Bar avers, *inter alia*, that:

1. This is a de facto condemnation case.

2. The de facto condemnee/displaced person is Frankford 5206 Bar, Inc. ...

3. The de facto condemnor/displacor [sic] is the Southeastern Pennsylvania Transportation Authority ('SEPTA')

. . .

   *  *  *  *  *  *

6. At all times pertinent hereto, 5206 has been the lawful occupant of Premises, initially pursuant to agreements dated September 25, 1969 and thereafter by Lease dated August 24, 1984, which provided that 5206

> ... shall have the right of first refusal in the event Lessor is desirous of selling Premises ... at any time during the term of this Lease and that before accepting any offer from a purchasers [sic], Lessor shall give the Lessee ten (10) days in which to accept or refuse the terms offered by said purchaser.

7. Said Lease also granted to 5206 the right, at its option, to remain in lawful occupancy of Premises until October 31, 1992 [2] and reserved unto 5206, in the event

---

**2.** Paragraph 30 of the addendum to the lease agreement provided the Bar with an option to renew the lease for a further term of five years from November 1, 1987 to October 31, 1992. This option, however, as previously noted, was required to be exercised by written notice to the

of acquisition of Premises by SEPTA, the right to recover all condemnation awards recoverable in its own right against SEPTA. A true and correct copy of said Lease and Addendum is appended hereto as Exhibit 'A'.

8. At all times pertinent hereto 5206 operated at Premises a restaurant for the licensed sale of food and alcoholic beverages, and had within said Premises various and sundry machinery, equipment and other fixtures necessary for the conduct of its said business.

9. At all times pertinent hereto, SEPTA knew or should have known and/or was aware of the rights and interests of 5206 in Premises and under the Agreement and the Lease.

10. By letter notice dated August 3, 1984, SEPTA first notified 5206 that it would acquire Premises for its Frankford Elevated Construction Project, that 5206 would have the rights of a displaced person under and pursuant to the Eminent Domain Code of Pennsylvania, and that 'at such time that SEPTA either owns or has control of the property, you will be given a 90 day notice to vacate.' A true and correct copy of said notice is appended hereto as Exhibit 'B'.

11. By letter notice dated February 27, 1985, SEPTA notified 5206 that it had acquired Premises for its Frankford Elevated Construction Project. A true and correct copy of said notice is appended hereto as Exhibit 'C'.

12. Neither SEPTA nor its landlord gave to 5206 requisite notice of said sale or afforded to 5206 the right to purchase Premsies [sic].

\* \* \* \* \* \*

14. By letter dated July 10, 1989, SEPTA terminated 5206's occupancy of Premises as of October 31, 1989. A true and correct copy of said notice is appended hereto as Exhibit 'E'.

15. Petitioner is unable to obtain a relocation site and is compelled to cease and go out of business.

lessor on or before July 31, 1987 and, if not so exercised, would become null and void.

16. As a result of the aforesaid, 5206 is unable to continue its business at Premises, is unable to relocate its business without substantial damage to and without loss of its machinery, equipment and other fixtures, its liquor licenses, its other personal property such as and including food and liquor stores and inventory and loss of substantial of its patronage.

17. SEPTA has neither offered nor tendered to 5206 in whole or in part the just compensation, displacement and other damages to which 5206 is entitled.

18. SEPTA has not filed a declaration of taking or a petition for the appointment of viewers as to Premises or in regard to 5206's interest therein or its claims for damages, as aforesaid.

Paragraphs 1–3, 6–12, and 14–18 of the Bar's petition for appointment of a board of view (footnote added).

The crucial issue here, as we see it, is whether the Bar's petition sufficiently establishes a property interest. Pursuant to Section 201 of the Code, 26 P.S. § 1–201, "[t]o be entitled to compensation for a taking, one must be the owner of a property interest taken." *Redevelopment Authority of Union County v. Property in West Milton,* 101 Pa.Commonwealth Ct. 634, 637, 517 A.2d 210, 211 (1986). "This section has been held to include tenants," *Id.,* and holders of options. *See* Comment to Section 201; *see also Redevelopment Authority of Union County* (an option to renew a lease is a property interest).

While the Bar, in its petition, avers that the lease agreement granted it an option to renew the lease, the Bar neither avers nor does the record suggest that it exercised this option in accordance with paragraph 30 of the addendum to the lease agreement. Likewise, while the Bar, in its petition, also avers that the lease agreement provided it with a right of first refusal, the Bar does not additionally aver, nor does the record suggest, that it attempted to enforce this right by contacting either the lessor or SEPTA at any time prior to the filing of its petition on August 22,

1989, despite notice of SEPTA's intent to purchase the subject premises as early as August 1984.

From our reading of paragraph 31 of the addendum to the initial lease agreement, the Bar's right of first refusal was tied to "this Lease." Accordingly, the right of first refusal, in our opinion, not having been pursued by the Bar within the proper period of time, expired with the expiration of the initial lease agreement on October 31, 1987 and could not subsequently be resurrected in the Bar's petition so as to provide the Bar with a compensable property interest.[3] Rather than waiting, the Bar should have filed a petition seeking compensation for a *de facto* taking of its right of first refusal prior to the expiration thereof on October 31, 1987. *Contrast Synes Appeal*, 401 Pa. 387, 164 A.2d 221 (1960) where an option to purchase had not expired at the time of condemnation.

Having failed to adequately exercise either its option to renew the lease or its right of first refusal within the proper periods of time, the Bar was left only with a leasehold interest extending until October 31, 1989, at which time SEPTA exercised its right as lessor not to renew the Bar's lease for a further term. "[W]hen the taking agency is the landlord no damage results to a tenant who is permitted to remain in possession until the end of the current lease." *Cherry Press, Inc. v. The Redevelopment Authority of the City of Philadelphia*, 11 Pa.Commonwealth Ct. 47, 57, 312 A.2d 477, 482 (1973).[4]

3. In any event, we note that a lease is in the nature of a contract, and, as such, is controlled by principles of contract law. *Department of Transportation v. DiFurio*, 124 Pa.Commonwealth Ct. 273, 555 A.2d 1379 (1989). Pursuant to Section 5525 of the Judicial Code, 42 Pa.C.S. § 5525, actions founded upon a written contract must be commenced within four years. Application of this section here leads to the conclusion that the Bar's claim to its right of first refusal was time-barred at the latest in February or March of 1989. *See* paragraph 11 of the Bar's petition for appointment of a board of view. A time-barred claim clearly cannot be resurrected in a subsequent petition so as to create a compensable property interest.

4. We note that a *de facto* taking of a leasehold interest cannot occur absent substantial interference with the tenant's use of the leased

■ For the foregoing reasons, we are constrained to conclude that the Bar failed to sufficiently plead a compensable property interest.[5] The Bar likewise failed to

premises. *Perfection Plastics, Inc. Appeal,* 28 Pa.Commonwealth Ct. 396, 368 A.2d 917 (1977). When SEPTA initially acquired the subject premises, the Bar's occupancy thereof was not affected. Accordingly, the date of acquisition here is not the relevant date in determining whether or not the Bar held a compensable property interest.

In reaching this conclusion, we necessarily reject the Bar's assertion that SEPTA effected a *de facto* taking of its leasehold interest as early as August 3, 1984 and, at the latest, in 1985, by virtue of its letters to the Bar as set forth in the Bar's petition, despite the fact that its occupancy of the subject premises remained ultimately undisturbed until October 31, 1989. In support, the Bar cites, *inter alia,* our decision in *Department of Transportation v. DiFurio,* 124 Pa.Commonwealth Ct. 273, 555 A.2d 1379 (1989).

The import of the Bar's assertion, as we understand it, is that SEPTA's actions substantially interfered with the Bar's interests in the subject premises prior to the expiration of the initial lease term and, therefore, at a time when its option to renew and its right of first refusal were still viable. However, as we previously stated, SEPTA's acquisition of the subject premises in 1985 did not force the Bar to vacate the premises, otherwise interfere with the Bar's use of the premises as a restaurant-tavern or extinguish the Bar's rights under the lease agreement in that SEPTA's acquisition was expressly made subject thereto. *DiFurio* is, without a doubt, inapposite. Therein, although the lessee remained in possession of the property, the lessee demonstrated, unlike the Bar here, that pre-condemnation activities caused a loss of business income to the degree that the value of the leasehold interest was substantially and adversely affected.

5. In reaching this conclusion, we necessarily reject the Bar's argument that its liquor and entertainment licenses as well as its machinery, equipment and other fixtures were compensable property interests under the circumstances here. As previously noted, the termination of the Bar's occupancy of the subject premises resulted from the expiration of its current lease term; not SEPTA's acquisition of the subject premises. Moreover, pursuant to paragraph 24 of the initial lease agreement, in the event that the Bar failed to exercise its option to renew the lease, any occupancy by the Bar after the expiration of the initial lease term was subject to the same terms and conditions as those set forth in the initial lease agreement. Under the initial lease agreement, the Bar agreed that all alterations, improvements, additions or fixtures shall remain on the subject premises at the expiration of the lease and become the lessor's property unless the lessor agreed otherwise in which event they could be removed by the Bar and the subject premises restored to its original condition. In the absence of an averment that the Bar received approval to remove its machinery, equipment and other fixtures, we can only presume that they became the lessor's property and, as such, could not constitute compensable property interests held by the Bar. Likewise, under the circumstances

sufficiently plead entitlement to damages as a "displaced person" since the termination of its occupancy here resulted from the natural expiration of its then current lease term and not from SEPTA's acquisition of the subject premises. *Hindsley v. Township of Lower Merion*, 25 Pa.Commonwealth Ct. 455, 360 A.2d 297 (1976).[6]

Having so concluded, we will reverse the trial court's order.

## ORDER

AND NOW, this 27th day of February, 1991, the order of the Court of Common Pleas of Philadelphia County, dated March 16, 1990, is hereby reversed.

here where a leasehold interest is terminated due to the expiration of the lease term, the acquiring agency, which occupies the same position as the original lessor, is not required under the Code to compensate the lessee for the value of liquor and recreational licenses any more than the original lessor would be required to do so.

6. While the Bar avers in paragraph 10 of its petition that SEPTA, by letter dated August 3, 1984, notified the Bar that it would have the rights of a displaced person under the Code, this averment in no way affects the conclusion reached here. The tentative status of the parties in August 1984, prior to SEPTA's acquisition of the subject premises, has no bearing on what in fact subsequently transpired.