Donald **GRUBE**, Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (CONSOLIDATED SPECIALTIES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 14, 1995.

Decided Dec. 4, 1995.

Michael P. McIntyre, for petitioner.

Wilbur C. Creveling, Jr., for respondent.

Before SMITH and FRIEDMAN, JJ. and NARICK, Senior Judge.

FRIEDMAN, Judge.

Donald Grube (Claimant) appeals from that part of an order of the Workmen's Compensation Appeal Board (Board) reversing a Workers' Compensation Judge's (WCJ) decision to award counsel fees for an unreasonable contest with respect to a Modification Petition filed by Consolidated Specialties (Employer).[1] We affirm.

Claimant was employed by Employer as a drywall finisher when, on April 16, 1987, he sustained a work-related injury to his right knee. On May 18, 1987, Claimant became disabled as a result of the injury and received benefits pursuant to a Notice of Compensation Payable.

On March 28, 1988, Employer filed a Termination Petition, alleging that Claimant had fully recovered from his work-related injury. After hearings and the presentation of evidence, on June 12, 1991, a referee denied

---

**1.** The Board affirmed the WCJ's denial of Employer's Modification Petition, and neither party has appealed from that part of the order.

Employer's petition, concluding, based on medical evidence submitted by Claimant, that Claimant suffered from reflex sympathetic dystrophy (RSD), a disorder secondary to an injury that causes an inflammatory response in the body's soft tissues and requires on-going medical and hospital-level care.

Employer subsequently sought the medical opinion of Walter J. Finnegan, M.D., a board-certified orthopedic surgeon, who examined Claimant on November 5, 1991 and concluded that Claimant, indeed, suffers from a severe case of RSD and that, as a result, Claimant has sustained the specific loss of his lower right extremity.

On March 26, 1992, Employer filed a Modification Petition, alleging that, on or about April 16, 1987, Claimant's injury had resolved into the specific loss of his lower right extremity. Claimant filed a timely answer denying the material allegations of the petition, and hearings were held before a WCJ.

At the hearings, Employer presented the deposition testimony of Dr. Finnegan, who opined that Claimant's RSD had resolved into the specific loss of his right lower extremity. Claimant testified on his own behalf and presented the deposition testimony of his treating physician, Dr. Yasin N. Kahn, a board-certified anesthesiologist. Dr. Kahn testified that Claimant suffers from RSD as a result of his work-related injury, that RSD is a progressive systemic disease that is not confined to one area of the body and that the RSD has spread to Claimant's back and left leg.

The WCJ rejected, for the most part, the testimony of Dr. Finnegan and accepted the testimony of Dr. Kahn. Thus, the WCJ concluded that Employer failed to prove that Claimant's injury had resolved into the specific loss of his right lower extremity. The WCJ also awarded counsel fees, concluding that Employer's contest was unreasonable.

Employer appealed to the Board, which affirmed the WCJ's denial of Employer's petition but reversed the award of counsel fees for an unreasonable contest based on the presence of conflicting medical testimony in the record.

### I.

On appeal to this court, Claimant argues that the Board erred in reversing the WCJ's award of counsel fees for an unreasonable contest.[2] We disagree.

 Section 440 of The Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 996, provides in pertinent part:

> In any contested case ... including contested cases involving petitions to ... modify compensation awards ..., the employe ... in whose favor the matter at issue has been finally determined in whole or in part shall be awarded ... a reasonable sum for costs incurred for attorney's fee ...: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

Whether an employer had a reasonable basis for a contest is a question of law fully reviewable by this court. *North Philadelphia Aviation Center v. Workmen's Compensation Appeal Board (Regan)*, 121 Pa.Cmwlth. 633, 551 A.2d 609 (1988). A reasonable contest is established when medical evidence is conflicting or susceptible to contrary inferences and there is an absence of evidence that an employer's contest was frivolous or filed to harass a claimant. *Id.*

Here, Dr. Finnegan testified, contrary to the testimony of Dr. Kahn, that RSD was basically a focal disorder, i.e., it may be limited to a particular region of the body or a limb.[3] With respect to Claimant, Dr. Finne-

---

**2.** Our scope of review is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Berks County Home v. Workmen's Compensation Appeal Board (Schnable)*, 145 Pa.Cmwlth. 582, 604 A.2d 767 (1992).

**3.** Dr. Finnegan did acknowledge that there were some reports in medical literature that RSD could spread to other parts of the body. However, Dr. Finnegan stated that he never observed a case where such spreading had been documented and, further, he found no such spreading in Claimant. (Finnegan Deposition of May 12, 1992 at 27.)

gan found that Claimant's RSD was restricted to his right lower extremity. (Finnegan Deposition of May 12, 1992 at 26–28.) Based on his findings and the medical reports of other physicians, Dr. Finnegan opined that Claimant had permanently lost the use of his right lower extremity for all practical intents and purposes as of May 9, 1988. (Finnegan Deposition of May 12, 1992 at 31–34.) If the WCJ had believed Dr. Finnegan, instead of Dr. Khan, such unequivocal medical testimony would support a modification of Claimant's benefits.

## II.

Nonetheless, Claimant argues that Employer's contest was unreasonable because the parties had already litigated the character of Claimant's disability under Employer's Termination Petition and, thus, Employer was precluded from relitigating whether Claimant was entitled to total disability benefits for RSD. We disagree.

Res judicata is a principle of law that precludes the relitigation of issues decided in a previous valid judgment in any future suit between the parties on the same cause of action. *Mason v. Workmen's Compensation Appeal Board (Hilti Fastening Systems Corp.)*, 657 A.2d 1020 (Pa.Cmwlth.1995). For res judicata to apply, four conditions must exist: (1) identity of the thing sued upon or for, (2) identity of the cause of action, (3) identity of the persons or parties to the action and (4) identity of the quality or capacity of the parties suing or sued. *Id.* Res judicata applies not only to matters which were actually litigated, but also to those matters which should have been litigated. *Crouse v. Workmen's Compensation Appeal Board (Pennsylvania Liquor Control Board)*, 165 Pa.Cmwlth. 233, 645 A.2d 310 (1994).

Contrary to Claimant's argument, there is no identity of the causes of action here.[4] In the initial proceeding, Employer sought to *terminate* benefits in March of

1988 because medical evaluations of Claimant in October and December of 1987 indicated that he had fully recovered from his knee injury after arthroscopic surgery. (R.R. at 16–17.) During the course of litigation, in May of 1988, Claimant was examined by Dr. Alexander Kalenak and, for the first time, was diagnosed with RSD in his knee.[5] (R.R. at 16.) Sometime later, in 1989, Jonathan D. Quevedo, M.D., also examined Claimant and found that he suffered from RSD. (R.R. at 16.) Both Kalenak and Quevedo opined that Claimant was disabled due to the RSD; the referee believed their expert testimony and concluded that all disability due to Claimant's knee injury had not ceased but, rather, continued. (R.R. at 17–18.)

Once Employer had a legal determination that Claimant was indeed disabled from RSD in his knee, Employer sought Dr. Finnegan's expert medical opinion as to whether Claimant has lost the use of his leg for all practical intents and purposes. (Finnegan Deposition of October 28, 1992, Claimant's Exh. F–1.) Based on Dr. Finnegan's response, Employer filed a petition to *modify* Claimant's benefits.

Because the prior termination proceeding, which litigated the continuation of Claimant's injury to his right knee, and the subsequent modification proceeding, which litigated the extent of Claimant's disability from RSD, are separate and distinct causes of action which involve different ultimate issues, Claimant's argument must fail.

## III.

Claimant also maintains that Employer's contest was unreasonable because Dr. Finnegan, an orthopedic surgeon, was not qualified to render an opinion on Claimant's disability from RSD. We cannot agree. The Pennsylvania standard of qualification for an expert witness is a liberal one. *City of Philadelphia v. Sorrentino*, 95 Pa.Cmwlth. 236, 505 A.2d 373 (1986). If a witness has any reasonable pretension to specialized knowledge on the subject under investiga-

4. An identity of causes of action exists when the subject matter and the ultimate issues in both the prior and the subsequent proceedings are the same. *Crouse.*

5. Dr. David Cooper, who examined Claimant in October of 1987, opined that Claimant did *not* have RSD at that time. (R.R. at 17.)

tion, the witness may testify; however, the weight to be given to the testimony is for the factfinder. *Id.* Here, the WCJ did not find that Dr. Finnegan was unqualified to testify as an expert medical witness.[6] However, as factfinder, the WCJ felt that Dr. Finnegan's testimony deserved less weight than that of Dr. Khan. Employer's contest is not unreasonable merely because the WCJ rejected the testimony of its expert.

### IV.

 Claimant next contends that Employer's contest is unreasonable because Dr. Finnegan offered no evidence that Claimant's injury had resolved to a specific loss *as of April 16, 1987,* the date of his original injury. We agree that Dr. Finnegan did not so testify. However, this court has held that where, as here, the claimant injures only one part of his body, the date when an injury resolved itself into a specific loss makes no difference in determining the employer's liability. *Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board (Kozlovac),* 108 Pa. Cmwlth. 317, 529 A.2d 610 (1987); *Elliott v. Workmen's Compensation Appeal Board (Daily Industries, Inc.),* 77 Pa.Cmwlth. 646, 466 A.2d 789 (1983). Thus, we do not believe that Employer's use of April 16, 1987 as the date of disability makes Employer's contest unreasonable.

### V.

 Finally, Claimant argues that Employer's contest was unreasonable because

Dr. Finnegan admitted that, separate and distinct from the RSD in his lower right extremity, Claimant was totally disabled from his addiction to narcotic drugs caused by treatment for his work-related injury. We cannot agree.

First, we do not believe that Dr. Finnegan testified unequivocally that Claimant was totally disabled from an addiction to narcotic drugs which were given to him for pain suffered as a result of his work-related injury.[7] Moreover, even if Dr. Finnegan's testimony was unequivocal in that regard, there is no evidence in the record to show that Employer was aware that Dr. Finnegan held that opinion when Employer filed its Modification Petition based on a specific loss theory.[8]

Accordingly, we affirm the decision of the Board.

### *ORDER*

AND NOW, this 4th day of December, 1995, the order of the Workmen's Compensation Appeal Board, Docket Number A93–3487, dated February 16, 1995, is affirmed with respect to the denial of counsel fees for an unreasonable contest.

---

**6.** Indeed, the record shows that Dr. Finnegan has a reasonable pretension to specialized knowledge pertaining to RSD. Dr. Finnegan testified as follows: (1) RSD tends to progress in a fairly relentless fashion until it eventually plateaus; (2) Claimant's RSD had progressed to the third stage, (R.R. at 40–41); (3) some of his patients have had the third stage of RSD, but he did not treat it because other specialists are better able to do that, (R.R. at 42–43); and (4) he was nevertheless familiar with a variety of treatment modalities for RSD and their effects on patients from his reading of the orthopedic medical literature on RSD, (R.R. at 43–46; 81).

**7.** Dr. Finnegan testified as follows:
Q. Now, to what degree would [Claimant's drug use] be disabling ...?
A. It depends on the body's ability to [adjust] over time to the medication. There's a hepatic

microsomal fraction which metabolizes drugs, so the more drugs you're on over a period [of time], the more the body is able to tolerate, thereby getting into a cycle where you require more to achieve the ostensible end product.
. . . .
A. Again, you have to get into the individual case. In [Claimant's] case, as of the day I saw him, ... it seemed to me that he had indeed developed a fair degree of tolerance for the medication.
(R.R. at 121–22.)

**8.** Although Employer, through its insurer, asked Dr. Finnegan whether Claimant had a narcotics problem, Dr. Finnegan did not understand that request to be for an opinion regarding the effect of Claimant's drug addiction on his ability to earn wages. (*See* R.R. at 115–17.)