## McElwee v. SEPTA

*Francis J. Moran* and *Peter Galante,* for plaintiff.

*Peter F. Kelsen, Francis X. Crowley* and *Michael E. Adler,* for defendant (until February 15, 2005).

*Drew K. Kapur, Michael Sklaroff* and *Elizabeth Hienold,* for defendant (after February 15, 2005).

CARRAFIELLO, *J.,* April 5, 2005—Petitioner below, Thomas A. McElwee & Son Inc. and John McElwee (together appellants) appeal from the February 17, 2005 order of the court of common pleas, whereby appellee SEPTA's preliminary objections were sustained and judgment was entered against appellants.

## FACTUAL AND PROCEDURAL HISTORY

In 1998, SEPTA provided notice to areas of West Philadelphia regarding impending construction to extend the "El" train service route. SEPTA set up a system for handling complaints and concerns from the public, and held community meetings for the affected areas. Appellants' printing business at 6206-10 Market Street was located in an area earmarked for construction, which began in January of 2000.

Thomas McElwee has worked in the family business since 1948 and moved it to the Market Street location in 1954. In December 1998, his son, John McElwee, took over the business and Thomas stayed on as a part-time employee along with two other employees. Thomas and John testified that 20 percent of their business was walk-in customers from the neighborhood; however, they were a union shop and much of their business was union-driven. (Thomas McElwee dep. at 99.) Appellants did not present any documentary evidence to support this estimate of walk-in business.

After construction began on their street, appellants assert the workers often impeded ingress and egress to their driveway by parking there during the construction. For a temporary period in 2000, appellants could not use their driveway to receive deliveries; instead they used a hand truck to move products from the delivery truck to the building. (John McElwee dep. at 18.) The block where the business was located was closed off to vehicle traffic entirely during office hours starting on September 22, 2002, lasting through May 2003, and occasionally appellants had to park a block or two from the business. Appellants had unobstructed access to the driveway early in the morning and late at night. (John McElwee dep. at 14.)

Although appellants claim "no supplier could deliver goods to plaintiffs' business," the record belies this assertion. Appellant John McElwee testified that, at most, there was one example of a supplier who may have come out to the business but could not make the delivery; the supplier returned the next day. (John McElwee dep. at 79.) Appellants claim they lost customers because they could not meet deadlines due to the difficulty in getting supplies; however, there was never a time when a delivery could not be made. (John McElwee dep. at 78-79; DeFlavia dep. at 22.)

Appellants designated one employee to call SEPTA and complain, which, it is alleged, he did dozens of times. Appellants, however, never filed a formal, written complaint or attended any of the community programs set up by SEPTA to deal with business-related complaints. Appellants claim they did speak with Michael Tucker, a business mitigation and development consultant for

SEPTA, but their complaints were ignored. Appellants never called the police department or the Philadelphia Parking Authority about the illegally parked cars and trucks that were blocking their driveway. (Thomas McElwee dep. at 79-80.)

Appellants began to turn down jobs in April and May of 2003, and closed the business on May 1, 2003, with $20,000 in unpaid bills. In September 2003, appellants petitioned for a board of view, claiming a de facto taking of their property. This court initially granted the petition; however, after reconsideration, a hearing and submission of findings of fact and conclusions of law by the parties, SEPTA's preliminary objections were sustained and this timely appeal followed.

## LEGAL DISCUSSION

The standard of review of a trial court's sustaining preliminary objections is limited to a determination of whether the court abused its discretion or committed an error of law. *Pidstawski v. South Whitehall Township,* 33 Pa. Commw. 162, 380 A.2d 1322 (1977). The trial court is the fact-finder, and its findings will not be disturbed if supported by substantial evidence. *McGaffic v. Redevelopment Authority of the City of New Castle,* 120 Pa. Commw. 199, 548 A.2d 653 (1988).

A de facto taking occurs when "an entity clothed with the eminent domain power substantially deprives an owner of the use and enjoyment of his property." *Conroy-Prugh Glass Co. v. Commonwealth,* 456 Pa. 384, 321 A.2d 598 (1974). A party alleging a de facto taking bears a heavy burden of proving that "exceptional circum-

stances exist which substantially deprive [them] of the use of their property, and that the deprivation is the direct and necessary consequence of the actions of the entity having the power of eminent domain." *Waldron Street Book Co. v. City of Pittsburgh,* 771 A.2d 111, 112 (Pa. Commw. 2001). There is no bright line test to determine when government action shall be deemed a de facto taking; instead, each case before the courts must be examined and decided on its own facts. *Id.*

In their 1925(b) concise statement of matters complained of on appeal, appellants allege their right to reasonable ingress and egress was denied. However, appellants were always able to access their property and, even if they had been temporarily deprived of access during the construction period, "the Eminent Domain Code does not permit any award of damages for the temporary loss of access during construction." *Berk v. PennDOT,* 168 Pa. Commw. 560, 566, 651 A.2d 195, 198 (1994), citing *Truck Terminal Realty Co. v. PennDOT,* 486 Pa. 16, 403 A.2d 986 (1979).

Appellant also alleges that "if a defendant's construction activities force the closure of plaintiff business and the realty owner's use and enjoyment of his realty, this constitutes a de facto condemnation." Appellants cite to *McCracken v. City of Philadelphia,* 69 Pa. Commw. 492, 451 A.2d 1046 (1982), to support this conclusion. The facts in *McCracken,* however, are significantly different than those of the appellants. In *McCracken,* the business affected by construction was a bar/restaurant that relied exclusively on neighborhood walk-in customers, whereas appellants testified that only 20 percent of their business was walk-in.

In addition, the *McCracken* business was cut off entirely from the sidewalk for an extended period of time, both front doors were continually blocked by construction materials, heavy equipment was constantly present, the area street lights were removed and the building suffered structural damage as a result of the construction. The Commonwealth Court found these incidences, taken in toto, and considering the transient nature of the business, amounted to exceptional circumstances which substantially deprived the owner of the use and enjoyment of his property. In contrast, appellants never lost access to the building—the owners and employees were always able to enter and exit their building, the property did not suffer structural damage and the business did not rely on walk-in customers.

Appellants have not met their heavy burden of showing that the decline and closing of their business was caused by SEPTA's actions. Appellants presented evidence that their business slowed down during the time of the construction; however, they failed to demonstrate that the closing of the business was a direct and necessary consequence of the construction. Although access may have been temporarily limited, the circumstances are not exceptional, and SEPTA did not unreasonably interfere with appellants' access to the property. This court found SEPTA did not substantially deprive appellants of their beneficial use and enjoyment of the property sufficient to establish a de facto taking.

For the foregoing reasons, this court's order of February 17, 2005, sustaining SEPTA's preliminary objections, should be affirmed.