**LEWISTOWN HOSPITAL, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (KUHNS),**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 14, 1996.

Decided Oct. 4, 1996.

Stephen F. Moore, for Petitioner.

Stephen M. Greecher, Jr., for Respondent.

Before McGINLEY and FRIEDMAN, JJ., and KELTON, Senior Judge.

FRIEDMAN, Judge.

Lewistown Hospital (Employer) appeals from an order of the Workmen's Compensation Appeal Board (WCAB) which affirmed the decision of a Workers' Compensation Judge (WCJ) awarding compensation benefits to Paulette Kuhns (Claimant) and awarding attorney's fees to Claimant's counsel based on Employer's unreasonable contest, pursuant to section 440 of the Workers' Compensation Act (Act).[1]

Claimant, a licensed practical nurse (L.P.N.), had been employed by Employer continuously from September of 1970 until December 30, 1991. In 1989, she began working in the hospital's extended care unit where, with assistance from one other nurse, Claimant was responsible for up to sixteen patients. Her job duties in that unit involved bedside nursing, including bathing the patients, taking them for walks, feeding them, giving them medications and changing their bandages. In performing these duties, Claimant frequently was required to lift the patients who weighed between one hundred and two hundred pounds, assisting them into and out of bed and taking them to dinner and to the bathroom. (WCJ's Findings of Fact, Nos. 2–3; R.R. at 41A–44A.) Claimant had a history of arthritis in her back and knees, requiring surgery on her right knee in 1984 and on her left knee in June of 1991. In addition, Claimant occasionally suffered low back pain; however, her physical problems never prevented her from performing her duties and, in fact, she regularly worked overtime. (WCJ's Findings of Fact, Nos. 4–5; R.R. at 44A–47A.)

On December 9, 1991, while lifting a patient who had fallen to the floor, Claimant experienced pain across her lower back into her hip. She reported the injury to Employer the next day and filled out an incident report. (WCJ's Finding of Fact, No. 6; R.R. at 47A–48A.) Despite continued pain, Claimant stayed on the job following the incident, (R.R. at 50A, 64A, 76A–77A), but sought treatment with her family doctor, who scheduled Claimant for tests, x-rays and an MRI and referred her to Jay Riden, M.D., an orthopedic specialist. (WCJ's Finding of Fact, No. 7; R.R. at 48A–49A.)

On December 30, 1991, Claimant saw Dr. Riden who, after an examination, permanently restricted Claimant from lifting over 50 pounds and from bending repetitively. Dr. Riden provided Claimant with written instructions to this effect, (R.R. at 103A), which Claimant then gave to Employer's Director of Nursing. Subsequently, Employer informed Claimant that she was no longer to report for work because there was no position available to her within the restrictions imposed by Dr. Riden;[2] therefore, Claimant has not worked since December 30, 1991. (WCJ's Finding of Fact, No. 7; R.R. at 51A–54A.) Beginning February 6, 1992, Claimant has been treated for her back problems by

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 996, which provides:

 (a) In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

 (b) If counsel fees are awarded and assessed against the insurer or employer, then the referee must make a finding as to the amount and the length of time for which such counsel fee is payable based upon the complexity of the factual and legal issues involved, the skill required, the duration of the proceedings and the time and effort required and actually expended. If the insurer has paid or tendered payment of compensation and the controversy relates to the amount of compensation due, costs for attorney's fee shall be based only on the difference between the final award of compensation and the compensation paid or tendered by the insurer.

2. Sheri Seager, Employer's Director of Human Resources, offered testimony before the WCJ confirming that Claimant's lifting restrictions precluded her from continuing in the L.P.N. position with Employer, and that Employer had no job available to Claimant within her medical restrictions. (WCJ's Finding of Fact, No. 11; R.R. at 88A–89A, 94A–95A.)

William T. Ayoub, M.D., a board-certified rheumatologist with whom Claimant had treated prior to her December 1991 injury.[3]

On April 17, 1992, Employer filed a Notice of Compensation Denial, declining to pay workers' compensation benefits to Claimant on the grounds that she did not suffer a work-related injury. (R.R. at 4A.) Thereafter, on May 5, 1992, Claimant filed a Claim Petition, alleging that, as of December 30, 1991, she has been disabled due to a work-related low back injury suffered on December 9, 1991. (R.R. at 5A–6A.) Employer denied the material allegations of Claimant's petition, and hearings were held before a WCJ.

At the first hearing, held on August 28, 1992, Claimant testified on her own behalf. During her testimony, Claimant recounted her extensive medical history, acknowledging that she had had surgery performed on each of her knees and that she suffered from arthritis in her back, knees and shoulders prior to the incident on December 9, 1991. Claimant then described the incident of December 9, 1991 and her resulting back pain. Claimant admitted that she had experienced this type of pain before, but stated that, until this injury, the pain always had gone away after she rested. (R.R. at 45A, 63A, 77A–78A.) Claimant further testified that on May 2, 1992, she was involved in a bicycle accident and fractured her ankle, requiring surgery. She stated that the use of crutches temporarily exacerbated her back pain; however, after she stopped using the crutches, her back condition returned to the point it had been in prior to the bicycle accident. (WCJ's Finding of Fact, No. 9; R.R. at 55A–57A.) Claimant stated that since her December 1991 injury, she has had continual trouble with her back and is still unable to perform her normal activities, such as laundry and grocery shopping, without aggravating her condition. (WCJ's Finding of Fact, No. 10; R.R. at 57A–58A, 60A, 70A.) Finally, Claimant acknowledged that she began receiving $893.00 a month in disability benefits from Employer after leaving work in December of

1991, and that she had not contributed to the disability plan. (R.R. at 73A.)

Claimant also presented the deposition testimony of Dr. Ayoub. Dr. Ayoub testified that he examined Claimant on February 6, 1992 and, based on Claimant's medical history and clinical findings, he diagnosed Claimant as suffering from degenerative arthritis with mechanical back pain, which was exacerbated by her December 9, 1991 work-related injury. (R.R. at 140A–44A.) Dr. Ayoub stated that he continued to treat Claimant and, when he last examined her on January 4, 1993, his diagnosis remained unchanged. (R.R. at 152A.) Further, based on Claimant's history, medical records and the findings of his physical examinations of Claimant, Dr. Ayoub testified within a reasonable degree of medical certainty that Claimant's work-related incident of December 9, 1991 produced an injury to her back, causing increasing back pain and muscle spasm, and rendering her incapable of performing her pre-injury job because the position required her to lift 50 pounds or more and repetitively bend at the waist. (WCJ's Finding of Fact, No. 13; R.R. at 155A–56A.) Summing up, Dr. Ayoub opined that, had the December 1991 episode not occurred, Claimant would have continued to function as she had before, and that her current inability to function was due to the December 9, 1991 injury. (R.R. at 156A–61A, 169A–70A.)

In rebuttal, Employer presented the deposition testimony of Dr. Riden, who testified that he first saw Claimant on December 30, 1991 to evaluate her complaints of back pain following her work injury on December 9, 1991. Dr. Riden stated that, at that time, he felt that Claimant had moderate degenerative arthritis requiring limited capacities, (R.R. at 217A, 219A), and, thus, he imposed restrictions on Claimant, requiring that she lift no more than 50 pounds and that she refrain from bending. (R.R. at 232A.) Dr. Riden testified that he examined Claimant again on May 25, 1993, at which time he diagnosed Claimant with (1) obesity, (2) degenerative disk disease and arthritis in the

---

**3.** In addition to providing his own treatment, Dr. Ayoub referred Claimant to the Geisinger Medical Center Pain Clinic for cortisone injections. For a short period, Claimant also received chiropractic treatment. (WCJ's Finding of Fact, No. 8; R.R. at 54A–55A, 147A–49A.)

lumbar spine and (3) a resolved lumbosacral sprain. Dr. Riden opined within a reasonable degree of medical certainty that, as of the May 1993 examination, Claimant's complaints of back pain were due to her pre-existing degenerative disk disease and arthritis and, thus, were unrelated to the lifting incident at work on December 9, 1991, an injury from which he believed Claimant had recovered. (R.R. at 224A–28A.) Dr. Riden also indicated that, although Claimant still needed the lifting and bending restrictions he prescribed for her, these limits were related to her arthritic condition rather than her employment injury. (R.R. at 226A, 233A.) On cross-examination, Dr. Riden admitted that Claimant had been able to work regularly until the December 9, 1991 incident precipitated her inability to perform her duties. (R.R. at 233A–35A, 237A–38A.)

Based on the evidence presented, the WCJ concluded that Claimant had sustained her burden of proof and awarded benefits to Claimant. The WCJ also determined that Employer had failed to establish a reasonable basis for contesting Claimant's claim and, thus, awarded attorney's fees.[4] The WCAB affirmed the WCJ's award of benefits and attorney's fees and, in addition, determined that Employer had waived its right to raise the issue of its entitlement to a credit for disability payments already made to Claimant. Employer now appeals to this court.

On appeal,[5] Employer raises four arguments for our consideration: (1) whether Claimant failed to establish by substantial competent evidence that she sustained an injury to her lower back as a result of her employment with Employer; (2) whether any benefits to Claimant should have ceased effective February 6, 1992 because Claimant had returned to her pre-injury status; (3) whether the WCAB erred in affirming the WCJ's decision awarding attorney's fees against Employer; and (4) whether the WCAB erred in denying Employer a credit for disability payments made to Claimant.

■ Employer first argues that the WCJ reached his determination without making any credibility determinations. Given the absence of such a credibility finding, Employer maintains that Dr. Ayoub's testimony does not provide substantial competent evidence to establish a work-related injury. We disagree.

■ Although the WCJ makes no specific credibility determinations, a fair reading of the WCJ's decision inevitably leads to the conclusion that the WCJ credited the testimony of Claimant and Dr. Ayoub.[6] Indeed,

4. The WCJ issued his decision on September 22, 1994; however, on November 7, 1994, following a request of Claimant's counsel, the WCJ issued an Amended Decision. The Amended Decision changed the amount of interest due on Claimant's award, raising it from six percent to ten percent, and stated that attorney's fees are to be added to, rather than deducted from, Claimant's award. In all other respects, the decision remained unchanged.

5. Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, an error of law was committed or constitutional rights were violated. *County of Delaware v. Workmen's Compensation Appeal Board (Thomas)*, 168 Pa.Cmwlth.231, 649 A.2d 491 (1994), *appeal denied*, 541 Pa. 628, 661 A.2d 875 (1995).

6. Moreover, we question whether a specific credibility determination is required in this case where the WCJ's finding with regard to the testimony offered by Dr. Riden does not include any portion of that testimony which would conflict with the testimony presented either by Dr. Ayoub

or by Claimant herself. Based on Dr. Riden's testimony, the WCJ found as follows:

[Employer] presented the testimony of Dr. Riden who treated the claimant on two occasions on referral from a colleague, Dr. Crimmel, and on May 25, 1993 at the request of PMA insurance Company. Dr. Riden reviewed previous x-rays and the MRI performed on the Claimant in December of 1991 and gave his diagnosis that the claimant had moderate degenerative arthritis of the lumbar spine. Dr. Riden was of the opinion that the claimant's degenerative arthritic condition developed over a long period of time. Dr. Riden acknowledged that according to the claimant's history, she was not prevented from working by the arthritic condition in her back prior to December of 1991. On cross-examination, Dr. Riden testified that as of December 30, 1991, the precipitating event that caused the claimant to be unable to perform her job duties as a Licensed Practical Nurse was the lifting accident of December 9, 1991. Dr. Riden agreed that the claimant was restricted in her activities of lifting 50 pounds or more and restricted from repetitive bending.

as Claimant points out, the WCAB, in its opinion, had no difficulty in seeing that the WCJ found both Claimant's testimony and that offered by Dr. Ayoub to be credible.[7] Here, Claimant testified with regard to the manner in which she sustained her injury on December 9, 1991, and Dr. Ayoub testified unequivocally and to the required degree of medical certainty that Claimant's work-related injury aggravated her pre-existing arthritis, resulting in her inability to continue in her job with employer.[8]

■ Specifically included in the statutory conception of "injury" is a job-related aggravation of a pre-existing condition, even if the underlying disease itself was not caused by a work-related injury. *Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Co.)*, 514 Pa. 450, 525 A.2d 1204 (1987). In order to receive compensation, a claimant alleging an aggravation of a pre-existing condition must show that the injury, or aggravation, arose in the course of employment and was related to that employment. *Povanda v. Workmen's Compensation Appeal Board (Giant Eagle Markets, Inc.)*, 146 Pa.Cmwlth. 320, 605 A.2d 478, *appeal denied*, 533 Pa. 603, 617 A.2d 1276

(1992). Here, Claimant has satisfied this burden through Dr. Ayoub's testimony, which provides substantial support for the WCJ's finding that Claimant suffered a work-related injury entitling her to benefits.

■ Alternatively, Employer claims that, even if Claimant established that she sustained a work-related injury on December 9, 1991, so that benefits were appropriately awarded commencing December 30, 1991, the WCJ erred by awarding those benefits on an ongoing basis rather than for a closed period. Noting that the burden of proof in a claim petition remains upon the claimant throughout the proceeding, *see Inglis House v. Workmen's Compensation Appeal Board (Laura Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993) and *Innovative Spaces, Inc. v. Workmen's Compensation Appeal Board (DeAngelis)*, 166 Pa.Cmwlth. 141, 646 A.2d 51 (1994), *appeal denied*, 541 Pa. 645, 663 A.2d 696 (1995), Employer asserts that Claimant failed to meet that burden after February 6, 1992.

In support of this argument, Employer points out that Dr. Ayoub acknowledged that, as of February 6, 1992, Claimant reported returning to her pre-injury status.[9] Further,

---

(WCJ's Finding of Fact, No. 14.) As fact-finder, the WCJ can accept or reject the testimony of any witness, including medical witnesses, in whole or in part. *Kraemer v. Workmen's Compensation Appeal Board (Perkiomen Valley School District)*, 82 Pa.Cmwlth.469, 474 A.2d 1236 (1984). Here, the WCJ clearly accepted only that part of Dr. Riden's testimony which would support an award of benefits.

7. In this regard, the WCAB stated:

In rendering his Decision and Order, the [WCJ] accepted as credible and persuasive the testimony of the Claimant concerning the circumstances of the work-related accident. The [WCJ] also accepted as credible and persuasive the Claimant's testimony concerning the pain which she continued to experience as of August 28, 1992.

The [WCJ] also accepted as credible and persuasive the testimony of Dr. William Ayoub, M.D., a Board-certified Rheumatologist, who has been the Claimant's treating physician for her back since February 6, 1992. The doctor testified that his impression at the time of the examination was that the Claimant had degenerative arthritis with mechanical back pain. This was exacerbated by an injury on December 9, 1991 while she was working.... The

doctor further testified that it was his opinion that the episode on December 9, 1991, produced an injury to her back which caused her to have increasing back pain, increasing muscle spasm, and that interfered with her ability to function. The restrictions concerning lifting amounts greater than 50 pounds were the result of the work-related injury of December 9, 1991.

(WCAB op. at 4–6.)

8. Indeed, Dr. Riden also testified that Claimant suffered a soft tissue injury in the lifting incident on December 9, 1991 and was still suffering from effects of the strain when he first examined her on December 30, 1991. In fact, Dr. Riden agreed that Claimant's December 1991 work injury was the precipitating event with respect to her inability to continue to work as an L.P.N. (R.R. at 227A, 233A–34A.)

9. During cross-examination, Claimant recalled seeing Dr. Ayoub on February 6, 1992, at which time she informed him that she felt she was back to the same condition she was in prior to December 9, 1991. (R.R. at 70A–71A.) Claimant also stated that as of May 1992, just before her bicycle accident, she had "pretty much" returned to her pre-injury condition. (R.R. at 73A.) On redirect examination, however, Claimant explained that

according to Employer, Dr. Ayoub admitted that he only continued to support Claimant's need for restrictions in order to protect himself from legal proceedings in the event Claimant experienced problems after returning to work. On this basis, Employer maintains that Claimant could have established her entitlement to benefits only for the period from December 30, 1991 until February 6, 1992. Again, we disagree.

Although Dr. Ayoub conceded that Claimant reported to him on February 6, 1992, that she thought she was at the same stage she was in prior to her injury, we note that Dr. Ayoub did not accept Claimant's assessment of her own condition. On the contrary, Dr. Ayoub testified that he believed Claimant made this statement because she wanted to come back to work, but that, in fact, Claimant had not returned to her baseline status. (R.R. at 166A–67A.) Dr. Ayoub never wavered from his opinion with regard to the cause of Claimant's current disability; he clearly indicated his belief that Claimant never recovered from the December 9, 1991 injury to the point where she could return to her pre-injury position. (R.R. at 157A–58A, 173A.) In fact, Dr. Ayoub testified that if Claimant were to return to work, she needed to restrict her lifting and bending in order to prevent another exacerbation or increase in her symptoms. (R.R. at 164A–65A). Recently, we held that an employee with a pre-existing condition which is aggravated by the workplace is entitled to compensation, even though her aggravation symptoms disappeared because she left work, if returning to her former position would likely subject the employee to further aggravation of her pre-existing condition. *See Knapp v. Workmen's Compensation Appeal Board (GTE)*, 671 A.2d 258 (Pa.Cmwlth.1996). Thus, Dr. Ayoub's testimony provides substantial evidence

to support the WCJ's determination that Claimant continues to be disabled from her work-related injury.[10]

■ Next, employer asserts that, given the divergence of medical opinions between Dr. Riden and Dr. Ayoub, Employer's contest of Claimant's action was reasonable and, thus, the WCJ and WCAB erred in awarding attorney's fees under section 440 of the Act.

■ When a claimant is awarded compensation in a contested case, the claimant is also entitled to an award of attorney's fees unless the employer can establish a reasonable basis for contesting the claim. *City of Scranton v. Workmen's Compensation Appeal Board (Cimoch)*, 88 Pa.Cmwlth. 64, 488 A.2d 648 (1985). Whether an employer's contest is reasonable is a question of law, fully reviewable by this court. *Grube v. Workmen's Compensation Appeal Board (Consolidated Specialties)*, 667 A.2d 1224 (Pa.Cmwlth.1995). In making this review, we must consider the totality of the circumstances because the reasonableness of a contest does not necessarily depend on a conflict in the evidence per se. *Majesky v. Workmen's Compensation Appeal Board (Transit America)*, 141 Pa.Cmwlth. 398, 595 A.2d 761, appeal denied, 529 Pa. 653, 602 A.2d 862 (1991). The determination depends upon whether the contest was prompted to resolve a genuinely disputed issue or merely to harass the claimant. *Peljae v. Workmen's Compensation Appeal Board (Mrs. Smith's Frozen Foods)*, 667 A.2d 763 (Pa.Cmwlth. 1995).

Here, Employer contends that the record clearly indicates that its contest of Claimant's claim was not frivolous or designed to harass Claimant, maintaining that when it denied the claim on April 16, 1992, Dr. Riden had

---

when she stated that she was feeling the way she did before the December 1991 incident, she meant that she no longer suffered from the constant pain she felt right after the injury; however, she indicated that any physical exertion would bring the pain on again. (R.R. at 71A, 73A, 75A–76A.)

**10.** Further, we note that although Employer asserts that Claimant herself testified that she had returned to her pre-injury status, that does not make it so; in fact, under the circumstances

here, it was impossible. In this case, despite her arthritis, Claimant was able to, and did, report to work each day from 1970 through 1991. However, Claimant is now under medical restrictions, precipitated by her work injury, which permanently prevent her from returning to her pre-injury position. Therefore, even if Claimant feels as she did prior to the December 9, 1991 incident, her injury has rendered her unfit to do the type of work she had been engaged in when injured and, thus, she remains disabled as a result of that work-related injury.

already provided Employer with information that Claimant's condition, and her resulting restrictions, did not result from a specific work injury but, rather, was due to her non-work-related degenerative arthritis. Additionally, Employer asserts that by the time it denied Claimant benefits, Dr. Ayoub had already noted that Claimant had indicated a return to her pre-injury condition. Finally, because of the divergent views of Dr. Ayoub and Dr. Riden regarding causation, Employer maintains that the award of attorney's fees was inappropriate. We disagree.

 Although the existence of conflicting medical evidence may provide a reasonable basis to contest liability, *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (White)*, 92 Pa.Cmwlth. 318, 500 A.2d 494 (1985), we cannot conclude that the WCJ or the WCAB erred in assessing attorney's fees under the circumstances presented here. Neither Dr. Ayoub nor Dr. Riden dispute that Claimant injured her back on December 9, 1991 while attempting to lift a patient who had fallen, an injury that she reported to Employer. Moreover, both Dr. Riden and Dr. Ayoub agree that this lifting incident was the precipitating event with respect to Claimant's inability to continue in her position as an L.P.N. with Employer; indeed, it was Dr. Riden who, after examining Claimant on December 30, 1991, placed the work restrictions on Claimant which precluded her return to her former position. Clearly then, Employer cannot rely on Dr. Riden's December 1991 examination of Claimant to provide a reasonable basis to contest Claimant's claim.

Moreover, Employer cannot look to Dr. Riden's May 25, 1993 examination of Claimant in order to establish a reasonable contest. On the basis of this later examination, Dr. Riden felt that Claimant had recovered from the soft tissue injury she sustained on December 9, 1991, thereby disputing the cause of Claimant's continuing disability. However, because this examination took place more than a year after Employer filed its Notice of Compensation Denial, and a year after Claimant filed her Claim Petition, it cannot provide Employer with a reasonable basis for its earlier decision to contest Claimant's ac-

tion. Despite claims to the contrary, Employer here has produced no evidence to show that, at the time it initiated a contest, it possessed medical evidence to justify that contest. *See Kuney v. Workmen's Compensation Appeal Board (Continental Data Systems)*, 127 Pa.Cmwlth. 628, 562 A.2d 931 (1989), *appeal denied*, 527 Pa. 605, 589 A.2d 694 (1990); *MacNeill v. Workmen's Compensation Appeal Board (Denny's, Inc.)*, 120 Pa.Cmwlth. 320, 548 A.2d 680 (1988); *Jones & Laughlin Steel* (cases holding that an employer cannot justify the initiation of a contest by means of a post hoc medical examination).

 However, Employer contends that, even if attorney's fees were appropriate, an award of 20% of Claimant's benefits, continuing indefinitely, constitutes a punitive award in contravention of *Eugenie v. Workmen's Compensation Appeal Board (Sheltered Employment Service)*, 140 Pa.Cmwlth. 51, 592 A.2d 358 (1991), which holds that fees awarded under section 440 of the Act for unreasonable contest are limited to a "reasonable sum," *Id.* at 361, and that section 440 was not intended to authorize what would amount to punitive damages in favor of the claimant's counsel. *Id..* Employer also contends that the determination of a reasonable sum for attorney's fees requires a factual query into the amount and difficulty of the work performed in generating the compensation award, and Employer points out that the WCJ made no factual determinations in this regard. We conclude, however, that Employer has waived this argument.

In its appeal from the WCJ's decision, Employer challenged the WCJ's finding of unreasonable contest; however, merely raising the issue of reasonableness of contest does not act to preserve the issue of whether the amount of the attorney's fees assessed by the WCJ was reasonable. *Delaware Valley Fish Co. v. Workmen's Compensation Appeal Board (Woolford)*, 151 Pa.Cmwlth. 387, 617 A.2d 48 (1992); *County of Delaware v. Workmen's Compensation Appeal Board (Thomas)*, 168 Pa.Cmwlth. 231, 649 A.2d 491 (1994), *appeal denied*, 541 Pa. 628, 661 A.2d 875 (1995). Because Employer here failed to raise the issue of the reasonableness of the

assessed attorney's fees before the WCAB,[11] it has waived its right to raise that issue before this court.

 Finally, Employer contends that the WCAB erred in denying Employer a credit for disability payments made to Claimant. Employer claims that it is entitled to a credit in the amount of $17,860.00 ($893.00 per month from April 16, 1992 until November 22, 1993) for long term disability benefits paid to Claimant pursuant to a program to which Claimant admittedly did not contribute.

In making this argument, Employer disputes the WCAB's contention that Employer has waived this issue by failing to raise it either before the WCJ or in the Notice of Appeal to the WCAB. On the contrary, Employer asserts that it did, in fact, submit its request for credit to the WCJ by introducing into evidence copies of the checks Claimant received for long term disability.[12] (Employer's Exhibit, No. D-3, R.R. at 246A–68A.) Moreover, Employer maintains that, when the WCJ disregarded the request for credit, Employer raised the credit issue again; first, in its Notice of Appeal to the WCAB by challenging the WCJ's conclusion of law establishing Claimant's entitlement to benefits and the scope of that entitlement and, thereafter, by continuing to argue the credit issue in its appeal brief to the WCAB.

We acknowledge that Employer introduced copies of Claimant's disability checks into evidence, and that Claimant testified that she had received these payments through Employer's plan to which she did not contribute, (R.R. at 73A); however, we agree with the WCAB that, according to the record, Employer never requested a credit for these disability payments. Moreover, we agree that, by failing to raise that issue in the Notice of Appeal to the WCAB, Employer waived its right to appeal the WCJ's failure to award a credit for disability payments. In doing so, we decline to accept Employer's argument that its challenge to the WCJ's Conclusion of Law, No. 2 preserved the question of its entitlement to this credit. That conclusion states that Claimant is entitled to an award of compensation and interest on all back compensation, but makes no mention of any credit due to Employer.

Appeals before the WCAB are governed by 34 Pa.Code § 111.11, which provides that appeals should contain "[a] statement of the particular grounds upon which the appeal is based, including reference to the specific findings of fact which are challenged and the errors of the law which are alleged. General allegations which do not specifically bring to the attention of the Board the issues decided are insufficient." 34 Pa.Code § 111.11(a)(2). Here, Employer could not succeed in framing its credit issue for the WCAB where Employer made absolutely no mention of that issue in questioning the WCJ's conclusions. Because its challenge to Conclusion of Law, No. 2 was inadequate to raise the credit issue before the WCAB, we are compelled to conclude that Employer has waived its right to raise that issue here.

Accordingly, we affirm the WCAB's grant of benefits to Claimant and the award of attorney's fees to Claimant's counsel.

### ORDER

AND NOW, this 4th day of October, 1996, the order of the Workmen's Compensation Appeal Board, dated December 15, 1995, is hereby affirmed.

---

11. We note that, in its appeal to the WCAB, Employer alleged error with regard to twelve of the WCJ's findings of fact; however, Employer did not challenge the WCJ's Finding of Fact, No. 17, which states, "The claimant has entered into a contingent fee agreement with Hepford, Swartz and Morgan providing for the payment of 20% of past and future workers' compensation benefits to this firm as a reasonable attorney fee."

12. Employer also contends that it identified the credit issue in its proposed findings of fact to the WCJ; however, these proposed findings are not contained in the record before us.