# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Archie Lidey III, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 726 C.D. 2016 |
| | : | Submitted: December 2, 2016 |
| Workers' Compensation Appeal | : | |
| Board (Tropical Amusements, Inc.), | : | |
| Respondent | : | |

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY JUDGE BROBSON          FILED: March 17, 2017

Petitioner Archie Lidey III (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board). The Board affirmed, as modified, the decision of a Workers' Compensation Judge (WCJ), granting Claimant's petition to review compensation benefits. We now reverse.

Claimant sustained an injury in the nature of a right arm fracture/crush injury while in the course and scope of his employment with Tropical Amusements, Inc. (Employer) on August 4, 2013. (Reproduced Record (R.R.) at 98a.) Employer accepted liability for Claimant's work-related injury pursuant to a Notice of Compensation Payable, dated August 12, 2013. (*Id.* at 98a-99a.) The Notice of Compensation Payable and accompanying Statement of Wages reflected an average weekly wage (AWW) of $640.00, and a weekly compensation rate of $458.50. (*Id.* at 94a, 98a.) Thereafter, on September 15, 2014, Claimant filed a

petition to review compensation benefits, alleging that Employer had improperly calculated his AWW and weekly compensation rate. (*Id.* at 1a-4a.)

Before the WCJ, Claimant testified that on August 4, 2013, he was assembling a carnival ride at the Greene County Fair, when the ride malfunctioned, causing the car/trolley to come down onto his right arm and pin his right arm between the ride's main support/tower and the car/trolley. (Supplemental Reproduced Record (Supp. R.R.) at 13b.) Claimant initially treated for his work-related injury at Ruby Memorial Hospital in Morgantown, West Virginia, where he underwent five or six surgeries on his right arm over a period of approximately ten to twelve days and was treated in the intensive care unit. (*Id.* at 20b-21b.) Since that time, Claimant has undergone two additional surgeries on his right arm. (*Id.* at 21b.) Claimant explained that he continues to treat for his work-related injury and that his doctors would like to perform additional surgeries, but he was currently being given some time to return to as much normal activity as possible for psychological reasons. (*Id.*)

At the time of his August 4, 2013 work-related injury, Claimant was working as a manager/fabricator for Employer, a family-owned business that provides amusement rides to fairs and carnivals. (*Id.* at 12b, 15b, 25b.) In this position, Claimant was responsible for Employer's day-to-day operations, contract negotiations, representing Employer at conventions and trade shows, buying and selling equipment, and assembling, disassembling, and repairing rides. (*Id.* at 15b-16b, 25b-26b.) Claimant explained that he took on the management duties in addition to his regular fabricator duties in the winter of 2012/2013 after his grandfather passed away. (*Id.* at 15b, 26b-27b.) Before that time, Claimant had been learning the management duties from his grandfather since approximately

2008 or 2009. (*Id.* at 15b, 29b.) Claimant testified further that in 2012, he was paid $1,000.00 per week from the first week in June through the last week of September. (*Id.* at 17b.) Claimant explained that in 2013, his weekly wages were increased from $1,000.00 to $2,000.00 in connection with his additional management duties. (*Id.* at 18b-19b.) Claimant explained further that prior to 2013, his employment duties stopped when the carnival season ended in September. (*Id.* at 19b.) After he took on the additional management duties, however, he was required to work through the winter months, attending conventions and trade shows, performing contract negotiations, buying and selling rides, and finding the best deals on ride parts. (*Id.*) Claimant testified that as a result of these wintertime employment duties, his weekly wages of $2,000.00 were supposed to continue beyond the 2013 carnival season. (*Id.* at 19b-20b.) Claimant stated further that had he not been injured, he would have expected his weekly pay to continue through the end of 2013 and into 2014. (*Id.* at 20b.) Claimant returned to work for Employer in a light-duty capacity in June 2014, performing tasks such as "catch drops" and monitoring ticket booths. (*Id.* at 21b-22b.) Claimant continues to work for Employer in a light-duty capacity and is able to perform additional duties as the condition of his arm improves. (*Id.* at 22b.)

Employer presented the testimony of Rebecca Lidey, Employer's president and Claimant's mother. (*Id.* at 39b, 41b.) Ms. Lidey testified that Employer is in the business of providing amusement rides for Pennsylvania carnivals from May through September of each year. (*Id.* at 40b-41b.) Employer has a summertime office located in Scottsdale, Pennsylvania, where it stores its equipment during the winter months, and a wintertime office located in Riverview, Florida, where it is incorporated. (*Id.* at 40b-41b.) Ms. Lidey confirmed that

Claimant worked for Employer as a fabricator in 2012, and Employer paid Claimant $1,000.00 per week. (*Id.* at 41b-42b.) Ms. Lidey also confirmed that Claimant took over some administrative duties after his grandfather passed away in 2012. (*Id.* at 42b.) Ms. Lidey explained, however, that Claimant was not paid to attend conventions on behalf of Employer during the winter months and received money only when he sold equipment for Employer. (*Id.* at 42b-43b.) Ms. Lidey stated that Claimant was "just helping the [family] business" by attending these conventions and performing other duties in the wintertime. (*Id.* at 44b-45b.) Ms. Lidey also admitted that Claimant was paid $2,000.00 per week beginning in 2013. (*Id.* at 45b.) Ms. Lidey explained, however, that while she and Claimant had discussed the possibility of Claimant receiving $2,000.00 per week during the entire year, Employer had not agreed to that arrangement prior to Claimant's August 4, 2013 work-related injury. (*Id.* at 43b.) Ms. Lidey testified further that no employee received any wages during the winter months at the time of Claimant's August 4, 2013 work-related injury, but that this changed in 2014, when Employer began paying Archie Lidey, Jr. and Claimant throughout the winter months. (*Id.* at 46b-47b.)

On June 26, 2015, the WCJ issued a decision, granting Claimant's petition to review compensation benefits.[1] In so doing, the WCJ concluded: (1) Employer improperly calculated Claimant's time of injury AWW as a seasonal

---

[1] On July 6, 2015, the WCJ issued an amended decision for the purpose of ordering and directing Employer to reimburse Claimant's counsel for all reasonable and necessary litigation costs. The WCJ reaffirmed his prior June 26, 2015 decision in all other respects. (*See* R.R. at 20a-24a.)

employee under Section 309(e) of the Workers' Compensation Act (Act);[2] and (2) pursuant to Section 309(a) of the Act,[3] Claimant's time of injury AWW was $2,000.00, which resulted in a weekly compensation rate of $917.00.

Employer appealed to the Board, arguing that the WCJ erred in concluding that Claimant was improperly classified as a seasonal employee, that Employer had improperly calculated Claimant's AWW, and that Claimant's correct AWW was $2,000.00. By decision dated April 13, 2016, the Board affirmed the WCJ's decision granting Claimant's petition to review compensation benefits, but modified Claimant's AWW to $717.95. In so doing, the Board determined: (1) the WCJ properly concluded that Claimant was not a seasonal employee; (2) the WCJ's calculation of Claimant's AWW under Section 309(a) of the Act "artificially inflated Claimant's compensation rate in comparison to his pre-injury earning experience;" and (3) the WCJ should have utilized Section 309(d) of the Act to calculate Claimant's AWW because it "is a more accurate reflection of Claimant's economic reality." (Board's Op. at 6-7.) Claimant then petitioned this Court for review.

On appeal,[4] Claimant argues that the Board committed an error of law when it applied Section 309(d) of the Act and modified his AWW to $717.95. More specifically, Claimant argues that by applying Section 309(d) of the Act, the

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(e).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(a).

[4] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

Board ignored the clear and unambiguous language of both Section 309(a) and Section 309(d) of the Act because Section 309(d) should have been utilized to calculate his AWW *only* if Sections 309(a), 309(b), or 309(c) did not apply. In support of his position, Claimant argues further that the uncontradicted and credible testimony of both Claimant and Ms. Lidey[5] established that at the time of Claimant's August 4, 2013 work-related injury, Claimant's wages were fixed by the week at $2,000.00, and, therefore, Section 309(a) of the Act should have been utilized to calculate his AWW.

In response, Employer argues that the Board properly applied Section 309(d) of the Act and modified Claimant's AWW to $717.95, because Claimant's pre-injury wages were not fixed by the week—*i.e.*, Claimant was continuously employed by Employer for the fifty-two weeks prior to his August 4, 2013 work-related injury, but he was only paid by the week during the carnival season and he performed various administrative duties in the winter months without pay.

Section 309 of the Act[6] provides in pertinent part:

> Wherever in this article the term "wages" is used, it shall be construed to mean the [AWW] of the employe, ascertained as follows:
>
> (a) *If at the time of the injury the wages are fixed by the week, the amount so fixed shall be the [AWW];*

---

[5] While the WCJ did not make any specific credibility determinations, the Board properly noted that based upon a fair reading of the WCJ's decision, it was apparent that the WCJ treated all of the testimony presented as credible. *See Lewistown Hosp. v. Workmen's Comp. Appeal Bd. (Kuhns)*, 683 A.2d 702, 706 (Pa. Cmwlth. 1996).

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582.

(b) If at the time of the injury the wages are fixed by the month, the [AWW] shall be the monthly wage so fixed multiplied by twelve and divided by fifty-two;

(c) If at the time of the injury the wages are fixed by the year, the [AWW] shall be the yearly wage so fixed divided by fifty-two;

(d) *If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c),* the [AWW] shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

(Emphasis added.)

Our Supreme Court had the opportunity to interpret Section 309 of the Act in *Lancaster General Hospital v. Workers' Compensation Appeal Board (Weber-Brown)*, 47 A.3d 831 (Pa. 2012). Applying principles of statutory construction, the Supreme Court explained that "Section 309 of the Act calculates a claimant's [AWW] by first examining how that claimant earned his or her wages '*at the time of the injury*.'" *Lancaster Gen. Hosp.*, 47 A.3d at 836 (emphasis added). The Supreme Court explained further that Sections 309(a), 309(b), and 309(c) of the Act "provide fairly straightforward methods for calculating the [AWW] of employees whose wages are fixed by the week, month, or year, respectively," whereas Section 309(d) "address[es] those employees who earned their wages by the hour." *Id.* at 839. Thus, Section 309(d) of the Act should only be utilized to calculate the AWW of claimants who are paid by the hour.

Here, the testimony of both Claimant and Ms. Lidey established that on August 4, 2013, at the time of Claimant's work-related injury, Claimant's wages were fixed by the week at $2,000.00. Contrary to Employer's arguments, it

7

is irrelevant that Claimant was continuously employed by Employer for the fifty-two weeks prior to his August 4, 2013 work-related injury or that he was not paid by Employer during the winter months, because Claimant's AWW must be calculated based on how he earned his wages on the date of his injury, not at some other point during his employment with Employer. In addition, there is no evidence in the record to suggest that Claimant was paid by the hour at the time of his August 4, 2013 work-related injury. Because Claimant's wages were fixed by the week and he was not paid on an hourly basis at the time of his August 4, 2013 work-related injury, Claimant's AWW must be calculated pursuant to Section 309(a) of the Act. For these reasons, we must conclude that the Board committed an error of law when it applied Section 309(d) of the Act and modified Claimant's AWW from $2,000.00 to $717.95.

Accordingly, we reverse the Board's order.

_____
P. KEVIN BROBSON, Judge

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Archie Lidey III,
                    Petitioner

            v.

Workers' Compensation Appeal
Board (Tropical Amusements, Inc.),
                    Respondent

:
:
:
:
:   No. 726 C.D. 2016
:
:
:
:
:

# **O R D E R**

AND NOW, this 17th day of March, 2017, the order of the Workers' Compensation Appeal Board is hereby REVERSED.

_____
P. KEVIN BROBSON, Judge