IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Factory Grinding Service, Inc. and : 
State Workers' Insurance Fund, : 
        Petitioners : 
 : 
       v. : No. 1376 C.D. 2024
 : 
Lane Hanna, FoodPrep Solutions, : Argued: October 7, 2025
LLC/Factory Grinding Service, Inc., : 
and Berkshire Hathaway Homestate : 
Insurance Company (Workers' : 
Compensation Appeal Board), : 
        Respondents : 


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MATTHEW S. WOLF, Judge


OPINION
BY JUDGE McCULLOUGH             FILED: November 7, 2025


      Factory Grinding Service, Inc. (Factory Grinding) and the State Workers' Insurance Fund (SWIF) (collectively, Petitioners) petition for review of the September 12, 2024 opinion and order of the Workers' Compensation Appeal Board (Board), which affirmed the September 20, 2023 decision of the Workers' Compensation Judge (WCJ), granting Berkshire Hathaway Homestate Insurance Company's (Berkshire) Modification, Review, and Joinder Petitions and ordering SWIF to reimburse Berkshire for 50% of the medical and wage loss benefits paid to Lane Hanna (Claimant) by Berkshire. Upon review, we affirm.

## I.    Factual and Procedural Background

Claimant was hired by Factory Grinding on July 14, 2017, as a delivery person/salesman of knives and food equipment.  Claimant's job required him to travel to deliver products and follow up.  He traveled to restaurants in Maryland and Pennsylvania twice a week in a company vehicle.  On October 15, 2020, Claimant was injured in a motor vehicle accident in Adams County while on his way home from Maryland when his vehicle was T-boned at 55 miles per hour by another driver who failed to stop at an intersection.

At the time of the injury, Factory Grinding was insured by both Berkshire and SWIF.[1]    On October 22, 2020, SWIF issued a medical-only Notice of Compensation Payable (NCP) indicating "no physical injury" and stating that Claimant was driving a company vehicle when struck by another vehicle, resulting in no physical injury.  On November 5, 2020, Berkshire issued a Notice of Temporary Compensation Payable (NTCP) for an October 15, 2020 date of injury in the nature of "skull contusion," indicating that Claimant was in a motor vehicle accident and hit his head.  Claimant ultimately had back surgery on June 2, 2021.  Indemnity benefits were started by Berkshire when Claimant started having lost work time after the back surgery.  On June 16, 2021, Berkshire issued an Amended NCP.  The description of Claimant's injury in the Amended NCP still read "skull contusion" even after the surgery and the paying of indemnity benefits.

SWIF, in the meantime, paid some medical expenses that Claimant incurred three days after the accident, including the ambulance, emergency room bill,

_____

[1] In January 2020, FoodPrep Solutions, LLC (FoodPrep) acquired Factory Grinding, thereby becoming its parent company.  Factory Grinding carried SWIF insurance, and FoodPrep carried private insurance through Berkshire.

and two prescriptions but denied all subsequent medical bills based on its understanding that there had been "no physical injuries."

On April 26, 2022, Berkshire filed Review and Modification Petitions, seeking to amend the description of injury. Berkshire alleged that it had been paying medical benefits from the outset of the claim and also initiated payment of indemnity benefits following Claimant's surgery. It argued that SWIF should have paid and should be paying 50% of indemnity and medical benefits and should reimburse Berkshire for 50% of the benefits already paid because Factory Grinding was insured by both SWIF and Berkshire on the date of injury. Berkshire also filed a Joinder Petition, naming SWIF as an additional insurer.

Subsequently, Claimant entered into compromise and release (C&R) agreements with both insurers on the same date. In the SWIF C&R agreement, the parties agreed that the claim accepted was medical only, with no specific injury identified. The parties agreed to resolve SWIF's liability for any and all injuries, including but not limited to the left shoulder, head, neck, back, knees, feet, including surgery, and any other injuries related to the October 15, 2020 incident. In exchange for the lump sum payment of $40,000, Claimant agreed to resolve all wage loss, medical, and specific loss benefit claims against SWIF's liability for all injuries.

In the Berkshire C&R agreement, the parties defined the injury accepted as a "skull contusion," for which Claimant began receiving temporary total disability benefits. Claimant agreed to release all claims for medical, indemnity, and specific loss benefits in exchange for a lump sum payment of $40,000. However, the parties agreed to preserve for adjudication Berkshire's Review, Modification, and Joinder Petitions. Following Claimant's testimony as to both his understanding of the C&R

3

agreements and desire for the WCJ to approve them, the WCJ approved the respective C&R agreements.

The WCJ proceeded to consider Berkshire's Review, Modification, and Joinder Petitions. Both Berkshire and SWIF stipulated that they had coverage at the time of Claimant's October 15, 2020 work injury. Berkshire argued that the description of injury for Claimant's October 15, 2020 incident should include an aggravation of preexisting degenerative changes of the thoracolumbar spine. (Supplemental Reproduced Record (S.R.R.) at 1328b.) It was SWIF's position, on the other hand, that these injuries were not related to the October 15, 2020 car accident. SWIF argued that, therefore, it should not be responsible for reimbursing Berkshire 50% of the wage loss and medical benefits Berkshire gratuitously paid for injuries that it never accepted and was not legally obligated to pay.

The WCJ reviewed the deposition testimonies of Claimant and the parties' medical experts. Claimant testified that, as the result of the accident, he injured his back, and left shoulder and his knees swelled up. He had a cut and lump on his head. Claimant testified that paramedics came to the accident scene and wanted him to go to the hospital, but he had cash and checks that he collected for Factory Grinding, and he could not go until those monies were turned over. The next day he went to Concentra Occupational Health. He was out of work for a few days. After that, he realized that he had a concussion and was kept off work for a couple of weeks. On October 18, 2020, three days after the accident, Claimant went to the emergency room (ER). He reported pain and stiffness. When Claimant returned to work, he continued to have pain in his neck, back, and shoulder. He also experienced leg and foot numbness after the accident. During that period, he felt terrible and was unable to carry anything heavy. He was then seen by WellSpan Neurosurgery. He complained that he had pain

4

at the base and the center of his back, his left shoulder hurt, and his feet felt numb. His low back pain felt like an electrical jolt, and he had numbness and tingling in both of his feet.

Claimant underwent a large decompression and fusion procedure of the spine on June 2, 2021. He had an additional procedure in July of 2021 because of an infection. His last day of work was May 26, 2021. After the July 2021 surgery he started receiving workers' compensation wage loss benefits from Berkshire. Claimant attempted to return to work in June of 2022. He worked for a few days. He did not think he could do his full-duty job driving 7 to 10 hours a day.

Berkshire presented the testimony of John Kline, M.D., who is board certified in physical medicine and rehabilitation and pain management. Dr. Kline testified that he evaluated Claimant on June 7, 2022, at which time he obtained a history of the work incident and Claimant's complaints and treatment. He reviewed numerous medical records and diagnostic studies as well as records of surgical interventions. He noted that at Concentra and in the ER, Claimant complained of numbness and tingling from his knees downward, which was a radicular complaint. The January 2021 Magnetic Resonance Imaging (MRI) reports indicated degenerative changes, disc protrusion at L5-S1 with evidence of S-1 nerve root contact and multiple levels of narrowing of the holes through which the nerve root exits. The indications for the 2021 lumbar MRI were back pain, motor vehicle accident, and radiculopathy. The indications for the 2021 cervical MRI were neck pain, motor vehicle collision, and left upper extremity radiculopathy type symptoms. Dr. Kline conducted an examination of Claimant and diagnosed a work-related contusion to the skull, a concussion, and sprain and strain to the cervical spine, left shoulder, both knees, and low back area. He opined that Claimant suffered a back injury resulting in multi-level thoracolumbar disc

5

herniations and had a decompression fusion from T-10 to S-1. As to the contusion, concussion, and multiple strains and sprains, Dr. Kline opined that Claimant had recovered. He indicated that it is difficult to assess whether the accident directly caused the disc herniations but opined that clearly there was an aggravation present to the degenerative changes and disc pathology. Following the accident, Claimant had increased symptoms, mainly radicular, which prompted the testing that discovered the problem which necessitated surgery. He opined that Claimant's treatment was work-related and was reasonable and necessary.

SWIF presented the testimony of Joshua Auerbach, M.D., who testified by deposition on April 11, 2023. Dr. Auerbach is a board-certified orthopedic spine surgeon with a subspecialty in adult and pediatric spinal surgery. (Reproduced Record (R.R.) at 202a.) He reviewed Claimant's medical records, took a history, and examined Claimant on February 17, 2023. *Id.* at 207a. Dr. Auerbach explained that Claimant has a long-standing smoking history; nicotine and smoking are known risk factors for the development and the acceleration of degenerative disc disease. *Id.* at 209a-10a. He reviewed treatment records, including the first note dated October 15, 2020, from Northeast Fire and EMS which indicated there were no injuries or illnesses to report. The first note from Concentra dated October 16, 2020, stated that Claimant reported feeling achy but was otherwise fine. It was also noted that there were no orthopedic injuries assigned at that time. *Id.* at 211a-12a. Dr. Auerbach opined that the medical records do not support an orthopedic injury as a result of the motor vehicle accident as it pertains to his mid or low back. The absence of contemporaneous complaints of back pain suggested to him that there was no causally related back injury as a result of the motor vehicle accident. *Id.* at 234a-35a. He opined there was no orthopedic injury as it pertains to the mid or low back as a result of the work injury in question.

The WCJ also considered the deposition testimonies of SWIF's and Berkshire's claim representatives and underwriters. SWIF presented the March 16, 2023 deposition of Carmen Marranca. Mr. Marranca has been a Claims Service Coordinator for SWIF for 10 years. His duties include analyzing claims in litigation, determining settlement value, negotiating claim settlements, participating in mediations, granting authority to settle claims, and working with contract counsel when claims are in litigation. *Id.* at 369a-70a. Mr. Marranca testified that on October 19, 2020, Claimant's employer reported the claim as a "no physical injury claim." *Id.* at 371a. He agreed that SWIF paid bills for the ambulance, the October 18, 2020 ER visit, and for a muscle relaxer and an anti-inflammatory medication prescribed two months after the accident. *Id.* at 374a, 404a. He agreed that the ER visit note stated:

> Sounds like fairly serious motor vehicle collision. He was unrestrained as far as he knows and T-boned by another driver going roughly 55 miles an hour. He did not lose consciousness and has recollection of the events and was able to self-extricate. He initially felt well and received medical attention. Since that time, he's been having forgetfulness, headaches moderate in nature, nonradiating. He also has some complaints -- complaining of some numbness in the anterior aspect of the shin where he has some bruising. In terms of other things that he has going on, he also has bruising of the left quadrant of his abdomen. And he had a bruise on his right back thoracic area.

*Id.* at 401a.

Mr. Marranca agreed that the ER visit note implied some type of injury, and that despite learning that Claimant had been prescribed a muscle relaxer and an anti-inflammatory prescribed two months after the accident, SWIF did not seek to amend the "no physical injury" NCP, and did not follow up with Claimant or his employer to confirm Claimant had no physical injuries. *Id.* at 402a-06a. Mr. Marranca

7

testified that SWIF did not receive any other bills until June of 2021 when it received a bill for anesthesia services. *Id.* at 375a. According to Mr. Marranca, SWIF denied payment for an anesthesia bill based upon the understanding that there had been no physical injuries. *Id.* Mr. Marranca explained that SWIF denied "everything after that" as "not related." *Id.* at 376a.

By administrative opinion and order, the WCJ granted Berkshire's Review, Modification, and Joinder Petitions. The WCJ credited the deposition testimony of Dr. Kline and found that Claimant's work injury "included an aggravation of his preexisting degenerative changes in his spine which resulted in the [spinal] surgery performed on June 2, 2021." (WCJ's Dec., 9/20/23, Findings of Fact (F.F.) No. 14.) Further, in Finding of Fact No. 15, he indicated, "I find that the work injury includes the June 2, 2021 surgery and wage loss benefits paid by Berkshire." *Id.* Concerning the Joinder Petition, the WCJ directed SWIF to reimburse Berkshire for 50% of all wage loss and medical benefits paid by Berkshire to Claimant and further instructed that SWIF may only take credit for the limited medical expenses paid to Claimant, pursuant to the medical-only NCP.

SWIF appealed the WCJ's decision to the Board, arguing that the WCJ's decision was not sufficiently well reasoned because Berkshire never accepted anything more than a "skull contusion," and, therefore, the WCJ was obligated to explain how Berkshire's June 2021 amended NCP was materially incorrect pursuant to Section 413(a) of the Pennsylvania Workers Compensation Act (Act), 77 P.S. § 771,[2] which states:

> A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by

---

[2] Act of June 2, 1915, P.L. 736, *as amended*.

either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

Section 413(a) of the Act, 77 P.S. § 771.

SWIF further argued that *Reading Anthracite Co. v. Oxenrider (Workers' Compensation Appeal Board)*, 318 A.3d 189 (Pa. Cmwlth. 2024), required the WCJ to consider the timeliness and manner in which the employer handled the claim when permitting a corrective amendment and to conclude that Berkshire had more than sufficient time to investigate this claim before the amended NCP was issued and yet only accepted a skull contusion.

On September 12, 2024, the Board affirmed the WCJ's decision, concluding that the WCJ properly disposed of the matter under Section 413, that *Reading Anthracite* was distinguishable and did not provide a basis for reversal, and that the WCJ made all necessary findings allowing for adequate review. On October 15, 2024, Petitioners filed a petition for review with this Court.

## II. Issues

On appeal,[3] SWIF contends that the WCJ committed an error of law or abuse of discretion in granting the Modification, Review and Joinder Petitions and finding that SWIF should reimburse Berkshire for 50% of the medical and wage loss benefits paid by Berkshire because the WCJ failed to address the legal criteria for

---

[3] On appeal from an adjudication of the Board, the adjudication shall be affirmed unless it is in violation of the constitutional rights of the claimant, it is not in accordance with law, or any finding of fact necessary to support the adjudication is not supported by substantial evidence. *Moonblatt v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 481 A.2d 374 (Pa. Cmwlth. 1984). On appeal, all evidence on a particular issue must be construed in favor of the party successful below. *Cerasaro v. Workers' Compensation Appeal Board (Pocono Mountain Medical, Ltd.)*, 717 A.2d 1111 (Pa. Cmwlth. 1998).

9

having an NCP reviewed, modified, and/or set aside in accordance with Section 413(a) of the Act, 77 P.S. § 771, or discuss whether that criteria was met here. SWIF argues that the WCJ may modify an NCP under this provision **only if** a material mistake of fact was made at the time the NCP was issued and that, here, the WCJ did not "make a finding as to whether or not the amended NCP issued by Berkshire was materially incorrect, which is required by Section 413(a) of the Act, [77 P.S. § 771]." (SWIF's Br. at 25.) It further argues that "[b]ecause Berkshire only accepted liability for a skull contusion, the WCJ was obligated to explain how the amended NCP was materially incorrect at the time that the amended NCP was issued. This explanation is absent from the WCJ's decision." *Id.* at 25. SWIF maintains that the WCJ's decision is, therefore, not a "reasoned decision" under Section 422(a) of the Act, 77 P.S. § 834. SWIF also argues, as it did before the Board, that pursuant to *Reading Anthracite*, Berkshire should have been precluded from expanding the accepted injury in the amended NCP because Berkshire had ample time to investigate and discover the facts prior to filing the amended NCP and yet only accepted a skull contusion. We find each of these issues are without merit.

### III.   Analysis

First, we do not agree that the WCJ was obligated to make a specific finding as to whether the amended NCP issued by Berkshire was materially incorrect. It is well settled that the Act does not explicitly require the WCJ to make a specific finding that the NCP is incorrect or to "formally amend" the NCP. *Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213 (Pa. Cmwlth. 2008).

In *Westmoreland*, the employer accepted the injury as a lumbar strain, and then later filed a termination petition. In denying the termination petition, the WCJ

10

found credible the claimant's doctor's diagnosis of a herniated L4-5 disc and post-traumatic lumbar radiculopathy at the L5 level. *Id.* at 214-15. The employer filed a second termination petition several years later, and this petition was also denied, in part because the employer's expert did not opine that the claimant had recovered from the herniated disc and lumbar radiculopathy injuries. *Id.* at 215-16. On appeal, this Court affirmed, holding that the WCJ's denial of the first termination petition based on a diagnosis of a herniated disc and lumbar radiculopathy **acted to implicitly amend the NCP to include those injuries**. *Id.* at 218. We explained that even in the absence of a formal amendment to an NCP, where a WCJ makes "findings in a termination petition . . . based on non-recovery from work injuries not accepted in the NCP, those injuries [become] part of the accepted injury." *Id.* at 217. *See also Mino v. Workers' Compensation Appeal Board (Crime Prevention Association)*, 990 A.2d 832, 839 (Pa. Cmwlth. 2010) (holding that although WCJ did not formally indicate that she was amending the description contained in the NCP, by crediting the claimant's expert and denying the employer's termination petition, the WCJ implicitly expanded the description of the injury to include an aggravation of the claimant's preexisting stenosis).

Here, the WCJ did not formally indicate that he was amending the description of the injury contained in Berkshire's amended NCP. However, logic dictates that the underlying amended NCP was materially incorrect, inasmuch as it specifically did not include the diagnosis that the WCJ found was included in the Claimant's work injury. The WCJ made a specific finding that Berkshire sustained its burden of proof to show that the NCP should be amended to include the aggravation of preexisting degenerative changes of the thoracolumbar spine. (S.R.R. at 1328b.) The WCJ made specific findings that the work injury included that injury. In Finding of

11

Fact No. 14, the WCJ found "Claimant's October 15, 2020, work injury included an aggravation of his preexisting degenerative changes in his spine which resulted in the surgery performed on 6/2/2021." At Finding of Fact No. 15, the WCJ found, "I find that the work injury includes the June 2, 2021 surgery and wage loss benefits paid by Berkshire." The WCJ's acceptance of Dr. Kline's opinion and the grant of Berkshire's Review Petition inescapably implies a corrective modification of the amended NCP.

Nor is there any validity to the argument that the WCJ erred in amending the description of the injury to include injuries to Claimant's lower spine. Section 413(a) permits amendment of an NCP in two ways. The first paragraph of Section 413(a) of the Act states:

> A [WCJ] may, at any time, review and modify or set aside a[n NCP] . . . or upon petition filed by either party with the [D]epartment [of Labor and Industry (Department)], or in the course of the proceedings under any petition pending before such [WCJ], if it be proved that such [NCP] . . . was in any material respect incorrect.

77 P.S. § 771. The second paragraph of Section 413(a) of the Act provides, in relevant part:

> A workers' compensation judge designated by the department may, **at any time**, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the [D]epartment or its workers' compensation judge, **upon petition filed by either party with the [D]epartment**, **upon proof that the disability of an injured employe has increased**, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed.

77 P.S. § 772 (emphasis added).

The first paragraph of Section 413(a) of the Act applies when a claimant seeks to correct a material mistake or inaccuracy in an NCP's injury description, while

12

the second paragraph applies when a claimant experiences an increase, decrease, recurrence, or cessation of the disability. *See Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577 (Pa. 2009).

Thus, "[t]he WCJ's power to [amend an NCP] is not limited to those instances where it is alleged that a material mistake existed at the time the [NCP] was issued. Rather, the statute authorizes the WCJ to scrutinize the accepted description of injury **as the claimant's physical or mental condition evolves over time**." 8 West's Pa. Practice, Workers' Compensation § 20:82 (4th ed.) (emphasis added); *Jeanes Hospital v. Workers' Compensation Appeal Board (Hass)*, 872 A.2d 159 (Pa. 2005) (disapproved of on other grounds by *Cinram*) (acknowledging that a claimant who develops a subsequent physical or psychological injury may seek to amend the NCP to reflect those further injuries).

Here, Berkshire filed a Review Petition and sought an order of 50% reimbursement from SWIF to Berkshire for benefits paid by Berkshire on this dual coverage claim and for the WCJ to determine the appropriate description of the work-related injury in order to allocate payment obligations appropriately. As noted, it was Berkshire's position that the description of injury should be expanded to include injuries to the left shoulder, head, neck, and spine. (S.R.R. at 1328b.) It was also SWIF's position that the only issue before the WCJ was whether Claimant's injury involved a low back injury leading to the June 2, 2021 surgery. At a hearing before the WCJ on March 1, 2023, counsel for SWIF defined the issue before the WCJ **as a medical issue**. He stated:

> SWIF does not believe that the claim should have been picked up, at least the low back injury. I mean, if you look at it where the medical will flush it out, that basically this was – you know, this was an auto accident. The Claimant

basically hurt his neck – or hurt his – it was basically a closed head injury, like a concussion type injury.

And then you know, a month, six weeks later, he starts having some symptoms in his low back, and he has this really bad degenerative condition that somehow, they ended up doing like, a five-level lumbar fusion. So it's you know, my client looked at that and said, we're not picking this up.

Meanwhile, Berkshire Hathaway picks it up and I think it's a claims issue. I don't think it's an underwriting issue, **and I think it's a medical issue.** They took Dr. Kline, and we got an [independent medical examination] you know, with Dr. Auerbach, and I think it's really a claims issue.

Let's put our cards on the table and just basically say, this is why we accepted it. And my client could say, this is why we denied it.

(S.R.R. at 239b-40b) (emphasis added).

Thus, the focus of the proceedings before the WCJ was on the issue of the description of the work injury as it related to Berkshire's and SWIF's coverage and obligations under the NCPs. The WCJ answered the only question posed to him – that being whether the aggravation of Claimant's degenerative disc disease should have been part of his work injury resulting in the payment of medical bills and wage loss benefits. The WCJ decided based on the competent evidence that the aggravation of Claimant's degenerative disc disease should have been included in the nature of the Claimant's work injury. Regardless of which NCP is considered, what is clear from the WCJ's decision is that both SWIF's and Berkshire's NCPs should be modified because they did not include that diagnosis.

Nevertheless, focusing on the timing of the amended NCP in relation to Claimant's spine surgery, SWIF emphasizes that Berkshire was aware of the back surgery before it issued the amended NCP and yet acknowledged only the skull

14

contusion. SWIF argues that the WCJ was required to explain how the amended NCP was materially incorrect when it was issued. SWIF cites no case law that supports its position. As noted, Berkshire did not have to prove that the amended NCP was materially incorrect when it was issued. Under Section 413(a) of the Act, 77 P.S. § 772, a WCJ may modify an NCP whenever it is shown that disability increased. *Jeanes*, 872 A.2d at 168. Here, in the course of the proceedings regarding Berkshire's Review Petition, Berkshire proved that the work injury included an aggravation of preexisting degenerative changes to the thoracolumbar spine and the work-relatedness of the back surgery. The WCJ found it necessary to amend the initial injury description to include these injuries after he credited Berkshire's medical expert, and this was permissible under Section 413(a) of the Act, 77 P.S. § 772.

SWIF next argues that our recent decision in *Reading Anthracite* requires reversal. In *Reading Anthracite*, this Court affirmed the denial of review and joinder petitions filed by a carrier which had mistakenly picked up a claim via NCP believing it was the proper carrier and later filed review and joinder petitions seeking to recoup benefits paid from another employer/carrier. The basis for the review petition was that there was a mistake with respect to Andrew Oxenrider's (the decedent) employment relationship at the time the carrier accepted liability via the NCP, under Section 413(a) of the Act, 77 P.S. § 771.

The case involved a fatal claim. Both West Spring and Reading Anthracite Company (RAC) conducted coal mining operations. West Spring, insured by Rockwood Casualty Insurance Company, employed the decedent as an equipment operator. The decedent was scheduled to be laid off by West Spring. However, RAC, insured by SWIF, needed a bulldozer operator, and the decedent was directed to report

15

to RAC on a bulldozer assignment on July 13, 2017, at RAC's facility at Oak Hill. He was fatally injured on July 25, 2017, while operating a bulldozer at Oak Hill.

Rockwood issued a notice of temporary compensation payable (NTCP), acknowledging a fatal claim on July 25, 2017, and began paying workers' compensation benefits to the decedent's widow, Molly Oxenrider. The NTCP converted to a full NCP. SWIF issued a Notice of Compensation Denial (NCD) on the basis that the decedent was not an employee of RAC at the time of the injury.

Meanwhile, in proceedings before the United States Secretary of Labor, RAC admitted that the decedent was working under RAC's direct control and supervision at the time of his death. West Spring and Rockwood thereafter filed a review petition and joinder petition against RAC and its carrier, SWIF, requesting reimbursement for amounts it paid to the widow.

The WCJ denied the review and joinder petitions, finding that West Spring failed to show that there was a material mistake of fact at the time that the NCP was issued or that there was insufficient time to investigate the claim before West Spring accepted liability for the claim and issued the NCP. The Board affirmed the WCJ's decision noting that evidence found credible by the WCJ indicated that both West Spring and Rockwood had sufficient time to investigate the accident that caused the decedent's death and that the issue of who the decedent's employer was at the time of death was vetted by the Rockwood adjuster by the time the NTCP was issued.

This Court affirmed the decision of the Board finding that the WCJ's decision was supported by substantial evidence and that the WCJ did not err or abuse his discretion in denying the petitions. We stated that where there is no dispute that the injuries suffered are work-related and where the question is which entity was the claimant's employer, a petitioner may request modification. The WCJ need not

16

consider the timeliness or manner in which the employer handled the claim, but that none of the cases prohibited a WCJ from considering circumstances including the timeliness and manner in which the employer handled the claim. In exercising his discretion, the WCJ will determine whether to permit a corrective amendment where the issue is the identity of the claimant's employer.

Here, SWIF argues that Berkshire's failure to investigate the claim before it issued the amended NCP should, as in *Reading Anthracite*, preclude it from seeking to transfer joint liability to SWIF. We agree with the Board that *Reading Anthracite* does not provide a basis for reversal.

First, the facts of *Reading Anthracite* differ from the present facts. In *Reading Anthracite*, the unresolved question was which entity, RAC or West Spring, was the decedent's employer. The identity of Claimant's employer is not at issue here. Berkshire and SWIF concede that they both had coverage on the date of injury. Further, unlike here, in *Reading Anthracite* there was no dispute that the injuries suffered by the decedent were work-related.

The legal issues also differ. In *Reading Anthracite*, Rockwood sought to set aside the NCP on the grounds that it contained a "material mistake of fact," *i.e.*, the identity of the correct employer, under Section 413(a) of the Act, 77 P.S. § 771. The WCJ denied the petition because Rockwood knew, or could have discovered, all relevant facts to resolve that issue when it entered into the NCP, and therefore, it could not later transfer liability to SWIF. Here, the issue before the WCJ was **the description of the work injury** as it related to Berkshire's and SWIF's coverage and obligations under the NCPs. Berkshire did not seek to amend the NCP on the grounds that there was a "material mistake of fact" at the time the NCP was issued. Rather, it argued that injuries that had evolved after the NCP was issued were work related. Unlike in

17

*Reading Anthracite*, the evidence Berkshire relied upon for modification of the agreement was not available to it at the time it entered into the NCP because the aggravation of the degenerative disc disease developed after the NCP was issued. For these reasons, we conclude SWIF's reliance on *Reading Anthracite* is misplaced.

Finally, SWIF argues that the WCJ's Decision was not reasoned pursuant to Section 422(a) of the Act, 77 P.S. § 834. Essentially its argument amounts to a claim that because the WCJ did not specifically state that Berkshire's amended NCP was materially incorrect, that negates the WCJ's ultimate well-reasoned conclusion. We disagree.

Section 422(a), 77 P.S. § 834, provides that the WCJ shall render a reasoned decision, containing findings of fact and conclusions of law based upon the evidence as a whole, which clearly and concisely states and explains the rationale for the decision so that all can determine why and how a particular result was reached. The adjudication shall specify the evidence upon which the WCJ relies in conformity with this section and shall provide the basis for meaningful appellate review. Where the decision is sufficient for effective judicial review, such as with a summary of the testimony, a showing of the grounds relied upon by the medical experts, and identifying the credible witnesses, the requirements are satisfied. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043 (Pa. 2003).

As noted, the WCJ was not required to go into a detailed legal analysis of Section 413(a) of the Act, 77 P.S. § 772, when he amended the description of injury. *Westmoreland*; *Mino*. In the WCJ's Findings of Fact Nos. 12-14, he summarized the testimony from the witnesses presented by Berkshire and SWIF. In those same Findings of Fact, he designated which testimony he found credible and not credible. His Conclusion of Law No. 2 makes clear that Berkshire met its burden of proof,

18

through competent medical evidence, to show Claimant's work-related injury included an aggravation of Claimant's degenerative disc disease. After reviewing the WCJ's Decision, we determine it is reasoned. Section 422(a) of the Act, 77 P.S. § 834; *Daniels*.

Accordingly, the order of the Board is affirmed.[4]

_____
PATRICIA A. McCULLOUGH, Judge

---

[4] SWIF also argues that the C&R Agreement entered into by Berkshire and Claimant should preclude any subsequent amendments to the description of injury acknowledged in the NCP, and that the WCJ failed to consider the C&R Agreement when rendering his decision. However, SWIF did not raise this issue before the Board. Therefore, it is waived. *Allen v. Workers' Compensation Appeal Board (Delaware County SPCA, Inc.)*, 34 A.3d 874, 876 n. 4 (Pa. Cmwlth. 2011); *Lewistown Hospital v. Workmen's Compensation Appeal Board (Kuhns)*, 683 A.2d 702, 710 (Pa. Cmwlth. 1996).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Factory Grinding Service, Inc. and : State Workers' Insurance Fund, :
        Petitioners :
:
        v. : No. 1376 C.D. 2024
:
Lane Hanna, FoodPrep Solutions, :
LLC/Factory Grinding Service, Inc., :
and Berkshire Hathaway Homestate :
Insurance Company (Workers' :
Compensation Appeal Board), :
        Respondents :

## ***ORDER***

AND NOW, this 7th day of November, 2025, the September 12, 2024 opinion and order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

PATRICIA A. McCULLOUGH, Judge